ROCKWOOD VOLUNTEER FIRE DEPARTMENT, Appellant, vs. TOWN OF KOSSUTH, Respondent.

*December 3, 1951—January 8, 1952.*

332

*John C. Mayer* of Manitowoc, attorney, and *Victor A. Miller* of St. Nazianz of counsel, for the appellant.

For the respondent there was a brief by *Fischer & Smith* and *Austin F. Smith,* all of Manitowoc, and oral argument by *Austin F. Smith.*

MARTIN, J. The respondent town of Kossuth has not established a fire department of its own or contracted with another for fire protection, as authorized in sec. 60.29 (18), Stats., and appellant seeks recovery for the value of its

services under the provisions of sec. 60.29 (18m), which reads:

"Any town failing to provide under subsection (18) or otherwise for a fire department and fire-fighting apparatus and equipment for extinguishing fires in such towns shall be liable for the services of any fire department in fighting fire and appearing to fight fire in such town upon request."

Respondent contends that said section is an unconstitutional delegation of legislative powers and functions to private persons.

In enacting sec. 60.29 (18) and (18m), Stats., the legislature exercised its power to determine what public policy shall be with respect to fire protection, and required town boards to provide such protection in one of three ways: They could establish their own fire department, contract with another for such service, or pay for the services of any fire department responding to calls within their boundaries. Having thus required that fire protection be afforded the residents of rural communities, the legislature delegated to the town board the administrative authority to select the method of protection and to levy and collect taxes for the support of that method.

We cannot agree with counsel's argument that the statute delegates the power to obtain fire protection to the person who requests the services of a fire department. The legislature has determined that there shall be fire protection. Obviously, no legislative body can anticipate when and where a fire will occur. Fire, by its nature, creates an emergency. It would be ridiculous to say that only a proper legislative or governing body may exercise the discretion necessary to determine whether the services of a fire department are required in a given circumstance. Nor could the statute sensibly limit requests to residents of the town or persons of a certain age or mental capacity. A nonresident passerby

might notice fire in a barn or other building, the owner of which may be absent from the premises. Should the passerby be permitted to turn in an alarm, or should the request for services of a fire department be delayed until such time as the owner or other "qualified" inhabitant of the town can make it? The answer is obvious. The possibility of false fire alarms being turned in by incompetent persons or pranksters cannot form the basis for declaring the statute unconstitutional. The town board has ample authority to deal with such contingencies.

It is contended that the statute delegates to private individuals the power to cause expenditures of public funds for fire protection. It is true that the statute does not itself impose a specific charge upon the town's public funds. But the statute does obligate the town to expend its funds for whatever fire protection it chooses to provide. The necessity for fire-fighting services is created by the fire. The fact that the judgment of a private individual must be resorted to in determining whether the fire can be controlled by a private bucket brigade or whether the situation requires the services of a fire department does not constitute the exercise of authority to levy a tax. The actual emergency, the fire, calls for the tax; the public liability has been created by the legislature in the enactment of the statute.

It has been recognized for some time in this state that where an emergency exists the necessary precautions may be taken immediately to combat it without previous authorization from a town board or municipal officer. Sec. 49.02(5), Stats., which provides for medical treatment of indigents, states in part:

"Except in counties having a population of two hundred fifty thousand or more, the municipality or county shall be liable for the hospitalization of and care rendered by a physician and surgeon to a person entitled to relief under

this chapter, without previously authorizing the same, when, in the reasonable opinion of a physician, immediate and indispensable care or hospitalization is required, and prior authorization therefor cannot be obtained without delay likely to injure the patient. . . ."

The tax situation is analogous to that presented when an individual takes advantage of vocational education provided by statute. In *Manitowoc v. Manitowoc Rapids* (1939), 231 Wis. 94, 99, 285 N. W. 403, where a student attended a school outside the town without permission or approval of the municipality and the municipality became liable for his tuition, this court said:

"The . . . question is whether the statutes in question deprive municipalities of property without due process. The basis for this contention is that unless municipalities which do not maintain vocational schools are to be permitted to pass upon the qualifications of applicants who propose to go to such a school in another town and to grant or withhold their approval in their discretion, there is a deprivation of the property of the municipality or its taxpayers without due process. The contention cannot be sustained. The legislature proposes to make vocational education available without tuition to all persons described in the statute. Municipalities of less than five thousand population must either maintain vocational schools or pay tuition in such schools maintained by other municipalities for the attendance there of its qualified residents. Municipalities which do maintain vocational schools are naturally permitted some power to withhold approval of students going to another town to get vocational training which may be available at home. Municipalities which maintain no vocational schools necessarily are not given this privilege because there is no basis upon which their discretion may operate. They offer no facilities and could only veto upon some undisclosed standard or basis the right to vocational training which the statute gives irrespective of residence. A municipality may either maintain vocational schools or pay tuition elsewhere. Having rejected one method of discharging its duty, it is bound to

take the other. We see nothing in this that denies due process to defendant or its taxpayers."

With respect to respondent's contention that the statute compels the expenditure of public funds for private purposes, we need only say that the question whether the general welfare requires such legislation is primarily for the legislature, and it seems clear that the law falls within the general police power.

No judicial power is usurped by the legislature in making the town liable for the payment of services rendered by fire departments. It is still within the scope of judicial inquiry to determine whether the services for which claims are advanced have been rendered and whether the charges therefor are reasonable.

Under the rule that a statute is valid unless manifestly in violation of the constitution, we must hold that sec. 60.29 (18m), Stats., is constitutional.

*By the Court.*—Order reversed and cause remanded with directions to overrule the demurrer.