KRAMER, Appellant, v. CITY OF HAYWARD and another, Respondents.

*No. 193. Argued January 4, 1973.—Decided February 8, 1973.*
(Also reported in 203 N. W. 2d 871.)

304

For the appellant there was a brief by *Bosshard, Sundet & Nix, Doyle & Woodmansee,* and *Patrick R. Doyle,* all of La Crosse, and oral argument by *Patrick R. Doyle.*

For the respondent town of Hayward there was a brief and oral argument by *Thomas W. Duffy* of Hayward.

For the respondent city of Hayward there was a brief by *Doar, Drill, Norman & Bakke* of New Richmond and oral argument by *James A. Drill.*

ROBERT W. HANSEN, J. The plaintiff set out to recover from the city of Hayward or the town of Hayward, or both, the damages he incurred when his supper club and bowling alley caught fire and burned. The trial court held that neither the city nor the town was liable, and we agree.

*City of Hayward.*

Conceding that the city had no statutory duty to respond to a fire outside its city limits, plaintiff seeks to hold the city liable under one of three theories: (1) Liability to a third-party beneficiary under an implied contract; (2) tort liability based on negligent performance of a duty arising out of an implied contract; and (3) tort liability based on violation of an assumed duty of the city to residents of the town.

The trial court found that there was no contract, express or implied, calling for the city to provide fire protection to residents of the town. Reviewing the minutes of the city council meetings, the trial court stated:

". . . They disclose a continual reluctance by the city to extend its department and equipment without the town contributing and a continuing indecision on the part of the town. The town levied no tax for protection nor paid the city any agreed moneys for any period of protection. . . . The course of dealings between the city and town concerning protection negates any mutual intention for the city to furnish blanket fire protection for the town. . . . [T]here is no evidence to show any promise by the city to respond when called. . . ."

The trial court finding that there was here no contract, express or to be implied, is amply supported by this record. It is not against the great weight and clear preponderance of the evidence, and that is the test.[1] A contract implied in fact may arise from an agreement

---

[1] *See: California Wine Asso. v. Wisconsin Liquor Co.* (1963), 20 Wis. 2d 110, 122, 124, 121 N. W. 2d 308.

circumstantially proved, but even an implied contract must arise under circumstances which show a mutual intention to contract.[2] The minds of the parties must meet on the same thing.[3] Here they did not meet, and the mutual intent or shared understanding which is an essential element of any contract is lacking. So the trial court held, and we uphold its finding.

On the implied duty claim that the city had voluntarily undertaken to provide fire protection to town residents, the trial court found no such voluntarily assumed duty. While the city had responded to fire calls from town residents in the past, the trial court found that the city had, over a fifteen-year period, consistently refused to assume fire protection responsibilities for the town absent some type of agreement. Reviewing the city council minutes, the trial court stated:

". . . The council minutes show that on 5/7/51 the fire department was instructed *not* to leave the city. On 3/3/52, when discussing formation of a joint fire protection district, the council *as a temporary measure* authorized calls within a radius of two miles over main-traveled roads of the city. On 5/5/52, the temporary measure was extended *thirty days.* Town officials were at both meetings of the council. Nothing fruitful was done by the town between 1952 and 1957, or as a matter of fact until after the fire about forming a joint fire protection district or forming a department of its own. On 5/6/57, the council authorized outside the city fire calls with *only* the old No. 2 Chevrolet truck. On 4/3/61, the city fire chief was given *discretion* whether to make calls out of the city. On 4/6/64, the council *prohibited* the department from making out-of-the-city calls." (Emphasis supplied.)

Under the concept of assumed duty, this court has held that a town, which had no duty to erect a safety sign in

---

[2] *Gerovac v. Hribar Trucking, Inc.* (1969), 43 Wis. 2d 328, 332, 168 N. W. 2d 863.

[3] *Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. 2d 690.

the first instance, once having done so it had the duty to properly maintain it ". . . as a safety precaution to the traveling public which has the right to rely on its presence. . . ."[4] Although one may have no duty to perform an act, if he attempts to do something to another, even though gratuitously, he must exercise reasonable care.[5] Any possible applicability of this concept to a municipal corporation[6] is blocked by the trial court finding, amply supported by this record, that the city here had assumed no duty of providing fire protection to town residents.

On this record, as the trial court properly found, the city of Hayward is not responsible to the plaintiff for fire losses sustained under any one of the three theories advanced.

*Town of Hayward.*

The plaintiff's case against the town of Hayward involves solely a question of statutory construction. The plaintiff claims that sec. 60.29, Stats., creates a mandatory duty on the part of a town to furnish fire protection to its residents, either (1) by establishing a fire department; or (2) entering into an agreement for fire pro-

---

[4] *Firkus v. Rombalski* (1964), 25 Wis. 2d 352, 358, 130 N. W. 2d 835.

[5] *Wulf v. Rebbun* (1964), 25 Wis. 2d 499, 131 N. W. 2d 303, citing Judge CARDOZO in *Glanzer v. Shepard* (1922), 233 N. Y. 236, 239, 135 N. E. 275, 276: "'. . . It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all . . . .'"

[6] *See:* Sec. 895.43 (3), Stats., providing: "(3) No suit shall be brought against any political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

tection with a town, city or village in which a fire department is established. The town contends that the statute provides a third alternative: to do neither but to pay any fire department from a nearby community that responds to a fire call in the town.[7]

The statute involved in the dispute as to its meaning or construction is sec. 60.29, Stats., reading, in pertinent part:

". . . The supervisors of each town shall constitute a board to be designated the 'Town Board of . . .' . . . Such board is empowered and required:

"(18) (a) To establish fire departments . . . [or] to enter into agreements with any town , . . city or village in which a fire department is established . . . .

"(18m) TOWN WITHOUT FIRE PROTECTION LIABLE FOR FIRE FIGHTING SERVICE. Any town failing to provide under subsection (18) or otherwise for a fire department and fire fighting apparatus and equipment for extinguishing fires in such towns shall be liable for the services of any fire department in fighting fire and appearing to fight fire in such town upon request."

Read together as they must be, it appears clear that three alternatives are provided, not two. Under sec. 60.29 (18) (a), Stats., a town can either establish a fire department or enter into an agreement for fire protection. Under sec. 60.29 (18m), in the event that it does neither, it must pay any outside fire department that responds to a call to a fire in the town.

The trial court did not read or construe sec. 60.29, Stats., differently. However, it found in a 1949 amendment an altering, if not repeal, of sec. 60.29 (18m). In making clear the authorization and requirement that

---

[7] The town thus seeks a review by this court of the trial court holding that the town had a statutory duty to provide fire protection, but that violation of such duty did not give rise to an action in tort against the town. This is permissible under sec. 274.12 (2), Stats., as correction of the alleged error would support, not reverse, the judgment appealed from.

public funds be used for payments by town under fire protection contracts and dealings with volunteer and private fire departments, the legislature made reference to ". . . *whenever it becomes necessary to provide protection as demanded under sec. 60.29 (18m)* . . . ." [8] The trial court agreed that sec. 60.29 (18m) provided some measure of "fire protection" in that without assurance of payments, it was doubtful that nearby departments would respond to fire calls from the town residents.[9] However, the trial court construed the reference to sec. 60.29 (18m) in sec. 60.29 (20) (b), as amended to be ". . . a mandatory directive to a town to contract for fire protection where there was no protection in the town

[8] Sec. 60.29 (20) (b), Stats., as amended by ch. 587, Laws of 1949, reading: "Whenever, upon petition of two-thirds of the resident freeholders of a contiguous district described in such petition, of any town to the town board of such town that such district desires fire protection from a nearby city, village or town department, specifying the kind of protection desired and the amount that such protection will cost yearly, *or whenever it becomes necessary to provide protection as demanded under section 60.29 (18m)*, such town board shall contract with the council of such city, the board of such village or the board of such town or any duly established volunteer or private fire company as specified in such petition, and such contract shall be executed by resolution of both governing bodies. The town board shall yearly appropriate and pay to such village, city or town, or duly established volunteer or private fire company the sum agreed upon for such protection and shall yearly levy a tax upon all the real and personal property in said contiguous district in order to reimburse said town; and any such village, city or town is hereby authorized to enter into such contract." (Emphasis supplied.)

[9] The trial court stated: ". . . It is difficult to read any demand for protection referred to in Sub. (20) (b) in Sub. (18m). As I read this latter subsection it provides for payment for fire services performed on request of a resident of the town. Without such a statute the town could legally refuse payment. It is doubtful if any fire company would ever respond on request if no payment was in sight, so in this sense the subsection does provide some means for some fire protection in the town."

. . . as opposed to only requiring payment should some fire department respond on call . . . ."

In thus construing sec. 60.29 (20) (b), Stats., as superseding sub. (18m) and requiring a town ". . . to contract in the absence of petition when without protection [against fires]. . . ," the trial court, by construction, repeals 60.29 (18m). At least it could have no application because there could be no town "without fire protection" under the law. Such repealer by construction violates the fundamental rule that statutes must be construed together and harmonized,[10] and the rule that the specific statute controls when a specific statute and general statute relate to the same subject matter.[11]

However, our reason for rejecting the construction given by the trial court to the statutes involved is that it exactly reverses the construction given these same statutes soon after their enactment. Sec. 60.29 (18m) was enacted in 1945. Sec. 60.29 (20) (b) was revised in 1949. In 1952, the question of whether a town was required to have a fire department or contract for fire-fighting service was twice considered by this court. The construction given the statutes was that where a town did not have or contract for fire service, it was to pay for the services of any fire-fighting force responding to calls within the town.

In the first case, *Rockwood Volunteer Fire Dept. v. Kossuth*,[12] this court held sec. 60.29 (18m), Stats., to be constitutional, and, more to the point here, construed it to mean:

---

[10] *Pruitt v. State* (1962), 16 Wis. 2d 169, 173, 114 N. W. 2d 148.

[11] *Maier v. Racine County* (1957), 1 Wis. 2d 384, 84 N. W. 2d 76; *Estate of Kirsh* (1955), 269 Wis. 32, 68 N. W. 2d 455, 69 N. W. 2d 495; *Estate of Miller* (1952), 261 Wis. 534, 53 N. W. 2d 172.

[12] (1952), 260 Wis. 331, 50 N. W. 2d 913.

"In enacting sec. 60.29 (18) and (18m), Stats., the legislature exercised its power to determine what public policy shall be with respect to fire protection, and required town boards to provide such protection in one of *three ways:* They could establish their own fire department, contract with another for such service, *or pay for the services of any fire department responding to calls within their boundaries. . . .*" (Emphasis supplied.) [13]

In the second case, *Rudolph Volunteer Fire Dept. v. Rudolph,*[14] an action to recover the value of fire protection services rendered to certain residents of the town involved, the same interpretation or construction was made, the court stating:

"Sub. (18) . . . requires the town board to provide fire protection for its inhabitants in one of two ways: It may establish a fire department of its own, or it may contract with another town in which a fire department is established. *If it does not do either, sec. 60.29 (18m), Stats., makes it liable for fire-fighting services rendered by any fire department that may be called. . . .*" [15] (Emphasis supplied.)

Thus, in both *Rockwood* and *Rudolph,* this court recognized that a town was not required to establish a fire department or to contract for fire-fighting services for its residents. If it did neither, it was liable for services provided by departments who were called by its residents if they responded to such calls. Such liability to a responding department falls far short of being liable for not having or contracting for fire department services.

In *Rockwood,* the court noted: "The respondent town of Kossuth has not established a fire department of its own or contracted with another for fire protection, as authorized in sec. 60.29 (18), Stats. . . ." [16] In *Rudolph,*

[13] *Id.* at page 333.
[14] (1952), 260 Wis. 362, 50 N. W. 2d 915.
[15] *Id.* at page 363.
[16] *Rockwood Volunteer Fire Dept. v. Kossuth, supra,* at page 332.

the court stated: ". . . The respondent town has no fire department of its own; it has not contracted for the services of another. . . ." [17] Like the towns of Kossuth and Rudolph, the town of Hayward had no fire department of its own and had not contracted for the services of another. Under sec. 60.29 (18m), and the reference to it in sec. 60.29 (20) (b), there was nothing illegal in their placing themselves in such status. More, however, is involved than the analogizing of the legal status of the town of Hayward now and the towns of Kossuth and Rudolph twenty years ago.

In *Rockwood* and *Rudolph,* this court was construing a statute. It was not determining what the appropriate public policy in the area of concern ought to be. It was not stating what it felt the law ought to be or provide. Rather, it was determining what the legislature intended when it enacted the statute involved. It was the legislative intent that was located, not the will or wishes of the court. Once a statute has been thus construed, it is not open to subsequent reconstruction. As this court recently observed:

" '. . . Courts are not responsible for the law. It is their province to declare and apply it and to construe statutes and constitutions in accordance with the will of the lawmaking power, where construction becomes necessary. When such construction has once been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. . . . When that situation exists it is the province of the legislature alone to change the law. The court should not attempt it, whatever may be the notions of judges as to what the law ought to be. . . .' " [18]

[17] *Rudolph Volunteer Fire Dept. v. Rudolph, supra,* at page 363.
[18] *Estate of Kohls,* ante, pp. 141, 146, 203 N. W. 2d 666 quoting *Eau Claire National Bank v. Benson.* (1900), 106 Wis. 624, 627, 628, 82 N. W. 604.

The argument that changed social conditions calls for a changed public policy must be addressed to the legislature, not to the courts. Parties may call for a change in the law but they cannot call for a change in the construction or interpretation given a particular legislative enactment, where the legislature has elected not to change it. The fact that the legislature has not altered the statute involved following its being construed by this court may well indicate legislative agreement with the construction given it. Certainly, in the case before us, it has meant that towns across Wisconsin have acted or non-acted in reliance upon the interpretation given sec. 60.29 (18m), Stats. And, as a great American jurist once put it, "[C]ertainty and uniformity are gains not lightly to be sacrificed. Above all is this true when honest men have shaped their conduct on the faith of the pronouncement."[19]

Under the interpretation given sec. 60.29 (18m), Stats., in *Rockwood* and *Rudolph,* the town of Hayward is not liable for failure to establish a fire department or contract for fire-fighting services. The trial court held that there was such duty, but that it was not a basis for tort liability. The result reached under either trip is dismissal of the action against the town of Hayward.

*By the Court.*—Judgment affirmed.

---

[19] Justice BENJAMIN NATHAN CARDOZO in *The Paradoxes of Legal Science* (1928), quoted in Bartlett's Familiar Quotations (14th ed. 1968), at page 902 b.