COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP654**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1824

IN COURT OF APPEALS
DISTRICT IV

MADISON GAS AND ELECTRIC COMPANY,

PLAINTIFF-APPELLANT,

V.

RICE INVESTORS, LLC, HILLTOP BADGERS, LLC,
WILCO, LLC, AND TROUT LAKE INVESTORS, LLC,

DEFENDANTS,

GREGORY RICE,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Madison Gas and Electric Company ("MGE") appeals three orders that were entered in the course of its litigation against Gregory Rice ("Rice"). The litigation between the parties began when MGE filed a breach of contract claim against Rice and other defendants. Rice filed and served his answer one day after it was due, and the circuit court entered a default judgment against him. The court later vacated that default judgment, the parties amended their pleadings, and MGE again moved for default judgment. Ultimately, the court denied MGE's motion for default judgment and granted Rice's motion to dismiss MGE's amended complaint for failure to state a claim.[1]

¶2 MGE argues that the circuit court erred at three points in this litigation: (1) when the court vacated the original default judgment; (2) when it denied MGE's subsequent motion for a default judgment with respect to the amended pleadings; and (3) when it dismissed MGE's amended complaint. We conclude that the court did not err when it vacated the original default judgment or when it denied MGE's subsequent motion for a default judgment; however, we conclude that the court erred when it dismissed MGE's amended complaint for failure to state a claim. Accordingly, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.

---

[1] MGE first filed a complaint on July 22, 2022, and then amended its complaint shortly thereafter on July 25. Any differences between these two pleadings are not material to the issues on appeal and, for ease of reference, we refer to the July 25 pleading as "the complaint." Similarly, we refer to the amended pleading that MGE filed on November 6, 2023, after the default judgment was vacated, as the "amended complaint," even though its caption designates it as the second amended complaint.

## BACKGROUND

¶3 The proceedings in the circuit court were extensive and we briefly summarize them here, adding more detail as needed in the discussion below.

### MGE's Complaint and the Default Judgment

¶4 In July 2022, MGE filed a complaint against Rice and several limited liability companies, which the complaint referred to collectively as "Defendants." The complaint alleged that Defendants breached a contract with MGE. Specifically, it alleged that Defendants "entered into a contract whereby MGE agreed to provide utility services" to 131 W. Wilson St. ("the Property"), and Defendants "agreed to pay bills" "for the utility services delivered to the Property by MGE." The complaint further alleged that, "[d]espite demands from MGE, Defendants have breached [their contractual] obligations by failing to pay in full amounts due for the utility services provided by MGE." MGE claimed that Rice and the other defendants owed more than $200,000 in unpaid utility charges, including "late payment charges in the amount of 1% per month."

¶5 MGE served its summons and complaint on Rice on August 9, 2022. It is undisputed that Rice was required to serve his answer by August 29, but that his attorney was not successful in transmitting his answer to the Wisconsin circuit court electronic filing system (the "e-filing system") until the day after it was due.

¶6 MGE moved to strike Rice's answer and for entry of a default judgment. In an affidavit that she filed with the court, Rice's attorney averred that she attempted "many times to get the answer" transmitted to the e-filing system but could not do so until 12:22 a.m. on August 30, "after struggling with [the e-filing interface] for hours." The attorney further averred that "she do[es] not

understand computer technology" and "employ[s] no staff" that could have helped her use the e-filing system.

¶7      The circuit court granted MGE's motion to strike.  It concluded that Rice's answer was served after the statutory deadline, and that his attorney's "struggles with the e-filing system" did not constitute "excusable neglect."  *See* ***Binsfield v. Conrad***, 2004 WI App 77, ¶23, 272 Wis. 2d 341, 679 N.W.2d 851 ("A party filing its answer late must demonstrate excusable neglect for the delay.").  The court stated that "an attorney's failure to obtain reasonable proficiency using the … e-filing system is not excusable" because the Wisconsin Supreme Court made e-filing mandatory "years ago" and "[i]mplicit in that dictate is the requirement [that attorneys] actually learn how to use the system."  The court pointed out that Rice's attorney could have effectuated service with other methods, like mail or fax, and so her "trouble with the e-filing system" did not explain the untimely service of the answer.

¶8      The circuit court also granted MGE's motion for default judgment. It agreed with MGE that the complaint "adequately state[d] a claim for breach of contract" against Rice and that, because "no issue of law or fact [had] been joined," "default judgment was appropriate."  The court entered a default judgment providing that Rice was jointly and severally liable for damages in the amount stated in MGE's complaint.[2]

---

[2] The default judgment also provided that Rice Investors, LLC, was in default.  Rice Investors did not seek to vacate or appeal the default judgment, and the circuit court has confirmed that it remains in effect as to Rice Investors.

**Vacating the Default Judgment**

¶9    After the default judgment was entered, Rice retained new counsel and filed a timely motion for relief pursuant to WIS. STAT. § 806.07(1) (2021-22).[3] In support of his motion, Rice argued that the complaint did not state a claim for breach of contract.  More specifically, he argued, among other things, that the complaint did not identify any contract language that Rice had breached, nor did it allege that MGE submitted any bill to Rice.  Rice asked the court to vacate the default judgment and dismiss the complaint.

¶10    The circuit court denied the motion for relief with respect to Rice's liability.  In so doing, the court determined that, contrary to Rice's argument, the complaint stated a claim for relief.  The court reasoned that, although the "safest course generally" would be to include all of the pertinent contract terms in the complaint, MGE's allegations were sufficient to state a claim for breach of contract.  Specifically, the court pointed to the paragraphs of the complaint that alleged that "Defendants" "entered into a contract whereby MGE agreed to provide utility services" and Defendants "agreed to pay … for the utility services," and that, "[d]espite demands from MGE, Defendants have … fail[ed] to pay."

¶11    Although the circuit court denied relief with respect to Rice's liability, it vacated the judgment as to damages.  The court's decision on this point appears to be limited—as the court explained, the calculation of damages in the complaint included a "late payment charge of 1% per month," but the complaint did not allege any contract term that provided for a late charge.  As the court

---

[3]  All references to the Wisconsin Statutes are to the 2021-22 version.

further explained, Rice's arguments "brought to [its] attention" the absence of a "breakdown of the total unpaid amount" in the complaint, and that the court "should have asked for some more evidence relating to the amount of damages," instead of accepting the amount stated in the complaint.

¶12    The circuit court then ordered both parties "to make submissions regarding proof of the damages." MGE filed copies of bills from 2021 to 2023, which showed that MGE was owed more than $200,000 from a customer that was identified in the bills as "131 W Wilson Bldg Corp." MGE also filed an affidavit from one of its customer service representatives, in which the representative averred that "131 W Wilson Bldg Corp." was not a real entity, and was a "false or fictitious" name for someone else. Although the affidavit did not say so explicitly, the representative's averments appeared to suggest that "131 W Wilson Bldg Corp." was a fictitious name for Rice. Specifically, the representative averred that the account was opened in 2003; that the application was made orally by phone; that the person applying for service provided "131 W Wilson Bldg Corp." as the name of the customer; that the mailing address and phone number for the customer account is the same address and phone number that are used by a corporation of which Rice is President and CEO; and that the email associated with the account was Rice's email at that corporation.

¶13    Rice responded with a brief that commented on MGE's submission on damages. In his brief, Rice framed his argument as one about damages, but in reality, the substance of the argument was that MGE's submissions showed that Rice was not liable for the unpaid utility charges. Specifically, Rice pointed out that MGE had not provided any "bill that [was] in Gregory Rice's name to evidence a contract between [Rice] and MGE," and he asserted that MGE had "misrepresented its claim to [the] Court." In response, MGE argued that Rice was

"relitigating his personal liability" and that his brief "amount[ed] to an improper request for reconsideration on a topic already adjudicated."

¶14    The circuit court held a hearing on the damages submissions in October 2023.  At the outset, the court expressed concern over the submissions.  Specifically, it stated that MGE's bills "raised more questions than answers about whether Mr. Rice is the individual who's actually liable for anything," and that, under the circumstances, the court was "stuck with the choice of either giving no damages or vacating [the default judgment] for the interest of justice."  MGE disagreed with the court's assessment.  It argued that the purpose of the hearing had been to "ascertain the amount of damages … and that's what [MGE] produced."  If the court now had concerns about Rice's liability for those damages, MGE argued, the court should order the parties to return for another hearing to address evidence related to that question.

¶15    The circuit court rejected MGE's proposed approach.  It emphasized that MGE had not shown that Rice, "as an individual person, entered into any contract [with MGE]," or "that he personally owe[d]" MGE for the unpaid utility charges.  And it pointed out that the complaint identified four companies besides Rice that could be responsible for the charges.  Because there "really seem[ed] to be a question of who's responsible," the court determined that it would be inefficient "to proceed on two different tracks."  Ultimately, the court determined that awarding "zero damages [to MGE] would be unfair" because MGE "may well have a claim" against Rice, but that it could not sustain the default judgment against Rice based on "the record that [it had] right now."  Therefore, the court vacated the default judgment.

**The Dismissal of MGE's Amended Complaint**

¶16 After the default judgment was vacated, the circuit court entered a scheduling order that allowed the parties to amend their pleadings. The scheduling order provided a deadline for MGE to file an amended complaint and further provided that Rice "shall" answer the amended complaint "or otherwise plead in response to it by December 20, 2023."

¶17 MGE timely filed its amended complaint, and Rice responded with a motion to dismiss for failure to state a claim. Rice's attorney transmitted the motion to the e-filing system on December 20, 2023, and the following morning, December 21, the e-filing system generated an e-mail notice of activity that notified MGE's counsel of the filing. *See* WIS. STAT. § 801.18(1)(kg) ("'Notice of activity' means a notice sent by the electronic filing system to alert the parties that there has been a new user, filing, or activity on the case.").

¶18 MGE moved to strike Rice's motion to dismiss and again moved for a default judgment. Although Rice had transmitted his motion to the e-filing system by the December 20, 2023 deadline, MGE argued that Rice was also required to *serve* his motion on MGE by that date. *See* WIS. STAT. § 802.01(2)(e) ("a motion which requires notice …shall be deemed made when it is served"). Citing WIS. STAT. § 801.18, which governs e-filing, MGE argued that service did not occur until the e-filing system generated and sent the notice of activity on December 21; therefore, MGE argued, Rice's motion was one day late.

¶19 The circuit court held a hearing on the pending motions. With respect to MGE's motion to strike, the court disagreed with MGE's interpretation of WIS. STAT. § 801.18. It cited the Wisconsin Supreme Court's commentary to the e-filing rules, which provide that, under the circumstances here, "service using

8

the electronic filing system is complete upon properly transmitting the document." S. CT. ORDER 14-03, 2016 WI 29, 368 Wis. 2d xiii cmt. at xxix (eff. July 1, 2016). Because Rice transmitted his motion on the date it was due, the court found that it was timely and denied MGE's motions to strike and for default judgment.

¶20 With respect to the motion to dismiss, the circuit court concluded that MGE's amended complaint failed to state a claim upon which relief could be granted. The court observed that the allegations in the amended complaint differed from those in the original complaint, which had, without further qualification, alleged that Rice "entered into a contract" with MGE. By contrast, the court observed that the amended complaint alleged that, "[b]y accepting utility services from MGE … as requested," Rice "entered into a contract" with MGE in 2003. The court further observed that, while the amended complaint alleged that Rice was an owner of the Property in 2003 at the time he allegedly entered into the contract, it also alleged that Rice was no longer an owner of the Property as of 2021, when the contract was breached.

¶21 Based on the allegations about Rice's change in ownership status, the circuit court determined that MGE had pleaded itself "out of court." That is, as discussed in greater detail below, the court ultimately relied on the allegations about Rice's lack of ownership at the time the contract was breached as a basis for dismissing the amended complaint as to Rice without prejudice.

¶22 MGE appeals.

**DISCUSSION**

¶23 As mentioned, MGE argues that the circuit court erred by vacating the original default judgment; by denying MGE's motion for default judgment on

9

its amended complaint; and by dismissing the amended complaint. We address the issues in that order.

## I. Vacating the Original Default Judgment

¶24 We review a circuit court's decision to vacate a default judgment for an erroneous exercise of discretion. ***Rhodes v. Terry***, 91 Wis. 2d 165, 176, 280 N.W.2d 248 (1979). A court does not erroneously exercise its discretion if its decision is based on the facts of record and on the application of the correct legal standard. ***Hartung v. Hartung***, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶25 MGE makes two distinct arguments related to the circuit court's decision to vacate the default judgment. It first argues that the court failed to comply with procedural due process requirements—specifically, that it acted "sua sponte" in vacating the judgment, without first providing MGE notice and an opportunity to be heard. In addition to this procedural argument, MGE also argues that the court erroneously exercised its discretion under WIS. STAT. § 806.07(1)(h), which allows a court to provide relief from a judgment for any reason "justifying relief from the judgment." We address these discrete arguments in turn.[4]

---

[4] MGE also argues that the circuit court erroneously exercised its discretion under WIS. STAT. § 806.07(1)(b), which allows the court to provide relief from a judgment based on "newly-discovered evidence." However, we need not address the arguments about newly discovered evidence because, as we explain below, we conclude that the court did not err when it vacated the judgment pursuant to § 806.07(1)(h). *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (An appellate court need not address every issue raised by the parties when one issue is dispositive.).

## A. The Procedural Argument

¶26 A court acts sua sponte when it acts "'on its own motion,'" rather than "in response to a request by the parties." *Wisconsin Voter All. v. Reynolds*, 2023 WI App 66, ¶15 n.4, 410 Wis. 2d 335, 1 N.W.2d 748 (citation omitted). The circuit court may act sua sponte to provide relief under WIS. STAT. § 806.07(1) if "the court provides the parties notice of its action and an opportunity to be heard." *Larry v. Harris*, 2008 WI 81, ¶20, 311 Wis. 2d 326, 752 N.W.2d 279; *see also State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982) ("Any objection to the circuit court's raising the issue sua sponte … is diminished or eliminated by the circuit court giving the litigants notice of its consideration of the issue and an opportunity to argue the issue."). And even if the court fails to comply with these requirements when it acts sua sponte, we will not reverse if the error was harmless. *See Karcher v. DHS Div. of Pub. Health*, No. 2020AP211, unpublished slip op. ¶14 (WI App Feb. 17, 2021) ("It is well established that due process violations are subject to a harmless error analysis." (citing *Schoen v. Board of Fire & Police Comm'rs of Milwaukee*, 2015 WI App 95, ¶24, 366 Wis. 2d 279, 873 N.W.2d 232)).[5]

¶27 We first observe that the procedural history of this case does not support MGE's characterization of the circuit court's decision as a "sua sponte" action. Recall that it was Rice who originally filed a motion asking the court to vacate the default judgment pursuant to WIS. STAT. § 806.07(1). Although the court initially denied Rice's § 806.07(1) motion with respect to liability, Rice's

---

[5] Throughout this opinion, we cite authored, unpublished opinions for their persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

subsequent briefing on damages all but explicitly asked the court to reconsider that decision. The nature of a pleading is "determined from its substance, and not from the label [the party] chose to apply," ***Buckley v. Park Building Corp.***, 27 Wis. 2d 425, 431, 134 N.W.2d 666 (1965), and here, Rice argued that the invoices, which identified the customer as "131 W Wilson Bldg Corp.," undermined MGE's claim that Rice was liable for any breach of contract. For its part, MGE clearly recognized that Rice was asking the court to reconsider its prior decision on liability—MGE's response expressly argued that Rice's brief was "an improper request for reconsideration on a topic already adjudicated." At the hearing that followed, the court determined that it could not sustain its previous decision to deny the § 806.07 motion with respect to liability because it was "no longer comfortable awarding damages on a default judgment basis on the record" before the court.

¶28 Based on this record, we do not consider the circuit court to have acted sua sponte. Rather, as illustrated above, the record shows that the court vacated the default judgment in response to Rice's request for reconsideration of the court's prior decision on Rice's motion for relief under WIS. STAT. § 806.07. And, although the response that MGE filed in the circuit court suggested that reconsideration would somehow be improper, the court was right to disregard that argument—a circuit court has inherent authority "to reconsider a nonfinal ruling

any time prior to the entry of the final order or judgment." *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶57, 265 Wis. 2d 703, 666 N.W.2d 38.[6]

¶29 But even if we were to accept MGE's characterization and consider the circuit court's action to have been sua sponte, we would reject MGE's assertions that it did not have adequate notice or an opportunity to be heard. The record reflects that MGE was on notice that the court might reconsider its prior determinations related to liability given that, as mentioned, Rice raised that issue in his briefing and MGE expressly responded to the reconsideration request. *See State ex rel. Schatz v. McCaughtry*, 2003 WI 80, ¶¶30-31, 263 Wis. 2d 83, 664 N.W.2d 596 (notice can take the form of actual or constructive notice).

¶30 Finally, to the extent that MGE argues that it did not have an adequate opportunity to challenge the circuit court's reasoning under WIS. STAT. § 806.07(1), we decline to reverse because MGE has not shown that it was prejudiced by this purported error. *Gittel v. Abram*, 2002 WI App 113, ¶29, 255 Wis. 2d 767, 649 N.W.2d 661. In *Gittel*, we determined that reversal was not warranted, even though the circuit court vacated a judgment sua sponte pursuant to

---

[6] Here, the circuit court's order on Rice's WIS. STAT. § 806.07 motion was a nonfinal order because the court had ordered further proceedings on damages. *See Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶57, 265 Wis. 2d 703, 666 N.W.2d 38 ("The order for the entry of a default judgment was not a final order, because it expressly ordered further proceedings to determine damages."); *Harder v. Pfitzinger*, 2004 WI 102, ¶2, 274 Wis. 2d 324, 682 N.W.2d 398 (an order is not final if it does not "dispose[] of all of the substantive issues in the litigation").

Although the parties do not argue about the contours of the circuit court's inherent authority to reconsider a nonfinal ruling, we have reason to think that it is broad. *See, e.g.*, *Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 295, 491 N.W.2d 119 (Ct. App. 1992) ("We see no reason why a trial court, having concluded that a prior nonfinal ruling in a pending case is wrong, cannot correct that error by reconsideration."); *see also State v. Holmes*, 106 Wis. 2d 31, 39, 315 N.W.2d 703 (1982) (not specifically addressing inherent authority, but stating that courts may raise issues sua sponte because "courts have the responsibility to decide cases in accordance with the law").

§ 806.07(1) without providing Gittel notice and an opportunity to be heard. *Id.* We reasoned that Gittel did not point to any argument related to the court's authority under § 806.07 "that she [could not] fully address on appeal." *Id.* The same is true here—MGE does not explain why we could not address its arguments under § 806.07(1) on appeal. Indeed, we do so in the section that follows.

## B. WIS. STAT. § 806.07(1) Authority

¶31 As mentioned, MGE also argues that the circuit court erroneously exercised its discretion by vacating the default judgment pursuant to WIS. STAT. § 806.07(1)(h). More specifically, it argues that the court could not vacate the judgment based on our supreme court's decision in *Miller v. Hanover Ins. Co.*, 2010 WI 75, 326 Wis. 2d 640, 785 N.W.2d 493.

¶32 WISCONSIN STAT. § 806.07(1) provides that the circuit court may "relieve a party or legal representative from a judgment, order or stipulation" if the circumstances satisfy one of the statute's various subsections. *See generally* § 806.07(1)(a)-(h) (providing that the circuit court may accord relief for various reasons including mistake, fraud, and newly discovered evidence). As pertinent to this appeal, under § 806.07(1)(h), the court may vacate a judgment for "[a]ny other reasons justifying relief from the operation of the judgment."

¶33 In considering a motion under WIS. STAT. § 806.07(1)(h), our supreme court directed circuit courts to "consider a wide range of factors," which we refer to as the "*Miller* factors." *See Miller*, 326 Wis. 2d 640, ¶36 (citation omitted). These factors include "but [are] not limited to" the following:

> [W]hether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which

> there has been no judicial consideration of the merits and the interest of deciding on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*Id.*

¶34    MGE correctly points out that the circuit court did not expressly cite the *Miller* framework when it vacated the default judgment.  However, it is within a circuit court's discretion to grant relief under WIS. STAT. § 806.07(1)(h), and we are "required to uphold [its] discretionary decision … if … there are facts of record which would support the [court's] decision."  *See Conrad v. Conrad*, 92 Wis. 2d 407, 415, 284 N.W.2d 674 (1979).  Accordingly, we consider whether the facts of record are such that the court could have properly determined that the *Miller* factors weighed in favor of vacating the default judgment.  *See Miller*, 326 Wis. 2d 640, ¶47 (doing the same).

¶35    Here, our independent analysis of the *Miller* factors supports the circuit court's exercise of discretion.  First, it is evident that the default judgment did not result from a "conscientious, deliberate and well-informed choice" by Rice.  Rather, he was prepared to contest his liability, but his attorney's lack of proficiency with the e-filing system caused Rice to be in default.  The second *Miller* factor—whether Rice received "effective assistance of counsel"—was satisfied for the same reason.  Third, the court could and evidently did conclude that the interest in deciding the case on the merits outweighed any interest in the finality of the judgment.  As for the fourth factor, the court determined that its review of the invoices called into question MGE's claim that Rice was liable for the unpaid charges.  Thus, the court determined that Rice may have a meritorious defense.  Finally, regarding the fifth factor, the court acknowledged that Rice's

default had cost MGE time and money, but it determined that there were more appropriate "ways to minimize prejudice" than keeping the default judgment in place. For all these reasons, we conclude that the court could reasonably have determined that the *Miller* factors weighed in favor of vacating the default judgment pursuant to WIS. STAT. § 806.07(1)(h), and therefore, it did not err in vacating the judgment.

## II. Order Denying a Default Judgment on the Amended Complaint

¶36 MGE next argues that the circuit court erred in denying the motion for default judgment that it filed with respect to its amended complaint. As mentioned, after the original default judgment was vacated, the court entered a scheduling order that allowed both parties to amend their pleadings. The order provided a deadline for MGE's amended complaint, and further provided that Rice must answer the amended complaint "or otherwise plead in response to it by December 20, 2023." MGE timely filed its amended complaint, and Rice transmitted his motion to dismiss to the e-filing system on December 20, 2023. On the following morning, the e-filing system generated and sent an electronic "notice of activity" that notified MGE's counsel of the filing.

¶37 MGE contends that Rice's motion to dismiss was untimely, and therefore, that the circuit court should have granted its motion for default judgment on the amended complaint. As we now explain, we reject MGE's argument and conclude that Rice's motion was timely and that the court did not err.[7]

---

[7] Although we resolve this issue based on our conclusion that Rice's motion to dismiss was timely, we note that the "circuit court has discretion in deciding whether to grant a motion for

(continued)

¶38 On appeal, MGE renews the arguments about the interpretation of WIS. STAT. §§ 802.01 and 801.18 that the circuit court rejected. It first cites § 802.01(2)(e), which provides: "In computing any period of time prescribed or allowed by the statutes governing procedure in civil actions and special proceedings, a motion … shall be deemed made when it is served." It then cites § 801.18, which was created by the Wisconsin Supreme Court to govern e-filing procedures. More specifically, MGE points to § 801.18(4)(c), which provides that "the notice of activity shall constitute proof of service on the other users in the case," and § 801.18(6)(a), which provides that "the notice of activity is valid and effective service on the other users." According to MGE, the unambiguous effect of these statutes is to provide that service by e-filing occurs when the notice of activity is generated and transmitted to the parties. Because the notice of activity in this case was not generated or sent until the day after Rice's responsive pleading was due, MGE argues that Rice's motion was not "made" by the December 20 deadline.

¶39 We begin our analysis by observing that MGE does not support its argument that WIS. STAT. § 802.01(2)(e) controls the deadline for Rice's responsive pleading. By its terms, § 802.01(2)(e) governs the "comput[ation of] any period of time prescribed or allowed by the statutes," and here, Rice's deadline to respond was not "prescribed … by the statutes." His deadline was

default judgment." **Shirk v. Bowling, Inc.**, 2001 WI 36, ¶9, 242 Wis. 2d 153, 624 N.W.2d 375; WIS. STAT. § 806.02 ("A default judgment *may* be rendered in favor of any party … if no issue of law or fact has been joined …." (emphasis added)). Therefore, even if Rice's motion had been untimely, the court would not have been required to enter a default judgment. *See, e.g.*, **Johns v. County of Oneida**, 201 Wis. 2d 600, 609, 549 N.W.2d 269 (Ct. App. 1996) (a circuit court may properly refuse to enter a default judgment and permit a party to answer if it would be required to grant relief from any default judgment it entered).

instead set by the circuit court's scheduling order. *See Hefty v. Strickhouser*, 2008 WI 96, ¶31, 312 Wis. 2d 530, 752 N.W.2d 820 ("Wisconsin circuit courts have discretion to control their dockets" and "may enter a scheduling order" to do so.); *Burkhart Constr. Corp. of Milwaukee v. Midwestern Roofing & Constr., Inc.*, No. 2011AP1321, unpublished slip op. ¶16 (WI App Nov. 29, 2011) (concluding that statutory timelines controlled in the absence of a scheduling order). That order required Rice to "otherwise plead in response" by December 20, and Rice pleaded in response by that date. Therefore, MGE provides no reason for us to conclude that the timeliness of Rice's motion depends on when it was served.

¶40 But even if we were to accept MGE's position that Rice needed to serve his motion by December 20, we would reject MGE's interpretation of WIS. STAT. § 801.18. As stated, MGE argues that § 801.18(4)(c) and (6)(a) unambiguously provide that service by e-filing occurs at the time the notice of activity is generated and transmitted to the parties, but in reality, neither statutory paragraph addresses the timing of service. Instead, para. (4)(c) merely states that "the notice of activity" is "proof of service," and para. (6)(a) states that it is "valid and effective service." Thus, although both paragraphs provide that service can be effectuated through the e-filing system by way of the notice of activity, neither specifies when service actually occurs.

¶41 Because WIS. STAT. § 801.18 is at least arguably ambiguous in this respect, we may consult extrinsic sources of interpretation, which include the Wisconsin Supreme Court's comments to § 801.18. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶50, 271 Wis. 2d 633, 681 N.W.2d 110; S. CT. ORDER 14-03, 368 Wis. 2d xiii cmt. at xxxvii ("Comments to the statutes and to the supreme court rules … are not adopted, but will be published and may

18

be consulted for guidance in interpreting and applying the[se] rule[s].").  Here, the court's comments are unambiguous and unequivocal.  The court stated that, if "personal service is not required, submission of a document to the electronic filing system is considered service on the other electronic users."  S. CT. ORDER 14-03, 368 Wis. 2d xiii cmt. at xxix.  The court further stated:  "Just as service through the post office is considered complete upon dropping a properly addressed envelope into a mailbox, service using the electronic filing system is complete upon properly transmitting the document."  *Id.*; *see also* WIS. STAT. § 801.14(2) (addressing service by mail, facsimile, and e-mail).

¶42    We further observe that MGE's interpretation of WIS. STAT. § 808.18 would lead to unreasonable results.  *See **Kalal***, 271 Wis. 2d 633, ¶46 (statutory language should be interpreted "reasonably, to avoid absurd or unreasonable results").  If service of an e-filed document were not considered complete until the notice of activity was generated, then the timing of service would depend largely on the actions or inactions of the clerk's office.  This is because a notice of activity is not generated until the clerk's office reviews an e-filed document and accepts it for filing.  *See* § 808.18(4)(c).  We have previously stated that, "[i]n e-filing, the litigant can only control the submission of the document in compliance with the system.  We will not hold the litigant responsible for the actions of the clerk accepting the digital files."  ***State v. Aderemi***, 2023 WI App 8, ¶25, 406 Wis. 2d 132, 986 N.W.2d 306 (2023); *cf.* ***Boston Old Colony Ins. Co. v. International Rectifier Corp.***, 91 Wis. 2d 813, 284 N.W.2d 93 (1979) ("The delay in stamping the notice of appeal as filed is solely the result of the clerk's oversight and appellants should not be denied their right of appeal based on the actions of the deputy clerk, which were beyond the appellant's control.").

¶43   Here, it is undisputed that the motion to dismiss did not require personal service, and that Rice properly transmitted the motion to the e-filing system on December 20, 2023. Therefore, his motion was timely served, and the circuit court did not err when it denied MGE's motion for default judgment.

### III. Dismissal of MGE's Amended Complaint

¶44   MGE's final challenge is to the circuit court order that dismissed the amended complaint as to Rice for failure to state a claim for relief. Whether a complaint states a claim is a question of law that we review de novo. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Id.*, ¶19 (citation omitted). To state a claim, "a complaint must plead facts that, if true, would entitle the plaintiff to relief" for a violation of applicable law. *Id.*, ¶21. "A complaint should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of [the] allegations." *Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987).

¶45   The claim at issue here is for breach of contract. A complaint states a claim for breach of contract when it alleges facts that, if true, demonstrate: (1) the existence of a contract between the plaintiff and the defendant; (2) failure of the defendant to do what it undertook to do; and (3) damages. *Pagoudis v. Keidl*, 2023 WI 27, ¶12, 406 Wis. 2d 542, 988 N.W.2d 606. Regarding the first element, the contract at issue may be express, or it may be implied in fact. *Gahl v. Aurora Health Care, Inc.*, 2022 WI App 29, ¶44, 403 Wis. 2d 539, 977 N.W.2d 756; *see also Kramer v. City of Hayward*, 57 Wis. 2d 302, 306-07, 203 N.W.2d

871 (1973) ("A contract implied in fact may arise from an agreement circumstantially proved … which show[s] a mutual intention to contract.").

¶46 Here, the pertinent allegations in MGE's amended complaint are as follows. Rice and another defendant, Hilltop Badgers, LLC, "acquired the Property … in August 2003 as tenants in common." That same month, "Rice and Hilltop Badgers or their authorized agent requested that MGE provide gas and electric service to the Property." In so doing, "Rice and Hilltop Badgers or their authorized agent used '131 W Wilson Bldg Corp.' as the name of the user of the utility service and the person responsible for bill payment." "'131 W Wilson Bldg Corp.' was the fictitious or doing business as name of Defendants Rice and Hilltop Badgers." "By accepting utility service from MGE as they requested, Defendants Rice and Hilltop Badgers entered into a contract with MGE whereby MGE agreed to provide electric and gas utility services to the Property" and "Rice and Hilltop Badgers agreed to pay bills itemizing the charges for the utility services supplied to the Property by MGE …."[8]

¶47 MGE further alleges that the ownership of the Property changed at some point after Rice and Hilltop Badgers purchased the Property and requested utility services in 2003. More specifically, "[s]ince approximately August 2013, the Property has been owned by Defendants Rice Investors, [LLC,] Hilltop Badgers," and two other limited liability companies, Wilco, LLC and Trout Lake Investors, LLC, "as tenants in common."

---

[8] The parties appear to agree that, to the extent that there is a contract for utility services, its terms of service, billing, and payment would be prescribed by the statutes and regulations that govern gas and electric utilities.

¶48    Finally, MGE alleges that, starting in September 2021, Rice and Hilltop Badgers "fail[ed] to pay properly and timely issued bills for utility services supplied by MGE to the Property." In total, "Rice and Hilltop Badgers owe MGE [approximately $250,000] for gas and electric services supplied to the Property from August 13, 2021 to December 28, 2022."

¶49    We conclude that these facts, when taken as true, sufficiently allege each element of a breach of contract claim. With respect to the first element, the existence of a contract, MGE sufficiently alleges the existence of an implied-in-fact contract between Rice and MGE. A party makes a prima facie case for the existence of a contract that is implied in fact by showing that "the defendant requested [that the plaintiff] perform services," the plaintiff "complied with the request," and "the services [provided] were valuable to the defendant." *Theuerkauf v. Sutton*, 102 Wis. 2d 176, 185, 306 N.W.2d 651 (1981). Here, as noted, MGE alleges that Rice, using a fictitious name, requested that MGE provide utility services to the Property in 2003, that MGE provided the requested services, and that "[b]y accepting utility service from MGE as requested," Rice "entered into a contract with MGE whereby MGE agreed to provide … utility services to the Property" and "Rice … agreed to pay bills … for utility services supplied." Although MGE does not expressly allege that these services were valuable to Rice, we can reasonably infer as much from the allegation that he requested and accepted the utility services that were used at the Property. And, with respect to the two remaining elements, the complaint plainly alleges that Rice breached the contract by failing to pay utility bills starting in 2021 and that MGE incurred damages as a result of that breach.

¶50    The circuit court reached a different conclusion. In so doing, it expressly acknowledged that a party may be liable for any contracts that the party

enters into under a fictitious name.[9] Therefore, if MGE can prove that "131 W Wilson Bldg Corp." is a fictitious name for Gregory Rice, as MGE alleged in the amended complaint, the name of the customer on the account would not prevent Rice from being liable for any breach of contract.[10]

¶51 Instead, in the circuit court's view, the dispositive issue was that Rice transferred his ownership interest in the Property to another entity prior to the breach. The court stated: "As I read the … amended complaint, plaintiffs plead their claims against [Rice] out of court when they say that their allegation, which I have to accept as true, is that [Rice] has not owned the property as an individual since approximately August 2013, and that there's these other four [LLCs] who have owned it as tenants in common."

¶52 As we understand the circuit court's reasoning, the court focused on the nature of the contract that was described in the amended complaint, and specifically on the allegation that Rice entered into a contract with MGE by requesting and accepting utility services from MGE. The court appears to have reasoned that, if Rice was no longer an owner of the Property in 2021, he could no longer accept services at the Property, and under those circumstances, he was

---

[9] As the circuit court appeared to recognize, a fictitious name is "merely descriptive of the person or corporation who does business under some other name; it does not create or constitute an entity distinct from the person operating the business." *Jacob v. West Bend Mut. Ins. Co.*, 203 Wis. 2d 524, 537 n.7, 553 N.W.2d 800 (Ct. App. 1996). Under Wisconsin law, a person or entity may enter into a contract using a fictitious name, and "the real actor behind the fictitious name can enforce the contract, [can] seek remedies, and is responsible for judgments." *Rock Hemp Corp v. Dunn*, 51 F.4th 693, 703 (7th Cir. 2022); *see also Paul Davis Restoration of Se. Wis., Inc. v. Paul Davis Restoration of Ne. Wis.*, 2013 WI 49, ¶27, 347 Wis. 2d 614, 831 N.W.2d 413.

[10] Although Rice disputed this general premise during the circuit court proceedings, he does not renew his argument on appeal.

somehow released from any contractual obligation to pay for those services. In other words, in the court's view, the liability for the contractual services depended on who owned the Property and was therefore in a position to accept the utility services on any given month. Rice renews this argument on appeal.

¶53 Whatever intuitive appeal it may have, we are not ultimately persuaded by the circuit court's rationale for dismissing the amended complaint as to Rice. In our view, the flaw in the rationale is that it appears to conceive of the alleged contract with MGE as one that was formed anew each month, when someone at the Property accepted utility services. Yet, we do not read the amended complaint as alleging a series of month-by-month contracts, in which the parties to the contract were subject to change based on a change in the ownership of the Property. As we read it, the gist of the amended complaint is that a contract was formed in August 2003, when Rice requested utility services under a fictitious name, and MGE opened an account under that name and started delivering gas and electricity to the Property, which Rice accepted.

¶54 The circuit court did not cite any law to support the premise that contractual liability depends on ownership. Nor does Rice cite any authority to support that proposition on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.3d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

¶55 Indeed, MGE cites Wisconsin authority that appears to stand for a contrary position. Among other things, MGE cites *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582, *aff'd by* 2006 WI 128, 297 Wis. 2d 606, 724 N.W.2d 879, and *Brooks v. Hayes*, 133 Wis. 2d 228, 395 N.W.2d 167 (1986). According to MGE,

these cases stand for the proposition that a contracting party does not necessarily transfer contractual obligations associated with a property merely by transferring its ownership interest in the property to another entity. *See Brew City Redevelopment Grp.*, 289 Wis. 2d 795, ¶11. Rather, MGE argues, the contracting party must seek "to be released from liability" by the other parties to the contract through a "novation." *Id.*; *see also Brooks*, 133 Wis. 2d at 244-45 (addressing the delegation of contract responsibilities through novation). As applied here, MGE argues, Rice was free to transfer his interest in the Property to other entities, but that did not mean that his contractual obligations to MGE were transferred to those entities. If Rice wanted to terminate his contractual liability for utility services at the Property without closing the account, MGE argues, he should have sought a novation or release from MGE.

¶56 Rice does not address any of these cases or concepts in his respondent's brief. Nor does he argue that the allegations in the amended complaint demonstrate that he was somehow released from liability by MGE. We take Rice's failure to respond to MGE's arguments as a tacit concession that the circuit court should not have dismissed the amended complaint as to Rice for failure to state a claim. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (a respondent's failure to respond to an argument may be taken as a concession). "Construing the complaint's factual allegations and its reasonable inferences liberally, as we must," it is clear that the amended complaint states a claim for breach of contract against Rice, despite Rice's alleged lack of ownership in the Property at the time of the breach. *See Wisconsin Mfrs. & Com. v. Evers*, 2021 WI App 35, ¶3 n.3, 398 Wis. 2d 164, 960 N.W.2d 442.

25

## CONCLUSION

¶57 For the reasons explained above, we conclude that the circuit court did not err when it vacated the original default judgment or when it denied MGE's subsequent motion for a default judgment; however, we conclude that the court erred by dismissing MGE's amended complaint for failure to state a claim. Accordingly, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.