STATE of Wisconsin EX REL. Leslie J. SCHATZ,
Petitioner-Appellant,

v.

Gary R. McCAUGHTRY, Respondent-Respondent-
Petitioner.

Supreme Court

*No. 01–0793. Oral argument February 13, 2003.—Decided
July 2, 2003.*

2003 WI 80

(Also reported in 664 N.W.2d 596.)

For the respondent-respondent-petitioner the cause was argued by *Thomas J. Dawson,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the petitioner-appellant there was a brief by *T. Christopher Kelly* and *Kelly & Habermehl, S.C.,* Madison, and oral argument by *T. Christopher Kelly.*

¶ 1. ANN WALSH BRADLEY, J. The petitioner, State of Wisconsin, seeks review of a published court of appeals decision that reversed the circuit court's dismissal of a petition for a writ of certiorari filed by Leslie Schatz, a prisoner at the Waupun Correctional Institution.[1] Schatz's petition sought review of three disciplinary decisions. The circuit court dismissed the petition

---

[1] *State ex rel. Schatz v. McCaughtry,* 2002 WI App 167, 256 Wis. 2d 770, 650 N.W.2d 67 (reversing an order of the circuit court for Dane County, Richard J. Callaway, Judge).

*sua sponte* under Wis. Stat. § 802.05(3) (1999–2000)[2] for failure to state a claim upon which relief may be granted.

¶ 2. The court of appeals concluded that Schatz's constitutional right to due process was violated when the circuit court dismissed the petition *sua sponte* without giving Schatz prior notice of its intent to do so and an additional opportunity to be heard. We agree with the State that the circuit court's dismissal of the petition did not violate Schatz's right to due process because Wis. Stat. § 802.05(3) provides constructive notice of the potential for a *sua sponte* dismissal for failure to state a claim and there are procedural safeguards that protect against erroneous *sua sponte* dismissals. We also conclude that the *sua sponte* dismissal did not violate Schatz's constitutional right to equal protection of the law. Accordingly, we reverse and remand to the court of appeals.

I

¶ 3. Schatz, an inmate at the Waupun Correctional Institution acting pro se, filed a petition for a writ of certiorari with the Dane County circuit court. The petition requested review of three prison disciplinary decisions, each of which was based on a separate conduct report.

¶ 4. As required by the initial pleading review procedure created by Wisconsin's Prisoner Litigation Reform Act (PLRA)[3] and codified in Wis. Stat. § 802.05(3), the circuit court reviewed Schatz's petition, including copies of the conduct reports, the disciplinary

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[3] 1997 Wis. Act 133.

committee decisions, and other supporting materials that Schatz provided with the petition. It determined that the petition failed to state a claim upon which relief may be granted. It therefore exercised its authority under Wis. Stat. § 802.05(3) to dismiss the petition *sua sponte* without requiring the defendant to file an answer.

¶ 5. The court issued a memorandum decision explaining its analysis. Its decision summarized each of the three conduct reports and the disciplinary proceeding that occurred as a result of each report. The court's decision recounted Schatz's assertions that the disciplinary decisions were invalid because of the untimely delivery of notice of hearings, the lack of evidence to support the charges, a retaliatory purpose for the charges, and the improper use of hearsay. The petition also claimed that there were "numerous due process violations" throughout the process.

¶ 6. The first disciplinary decision concluded that Schatz disobeyed an order. The circuit court determined that Schatz was time barred from challenging this decision because he had not filed the petition within the statutory time period. It cited Wis. Stat. § 893.735 which provides that an action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues. The court noted that Schatz's most recent administrative denial of his challenge of the first disciplinary decision was July 29, 2000. Schatz filed the petition for a writ of certiorari on November 21, 2000, 71 days past the deadline. Therefore, with respect to the first disciplinary decision, the court determined that because of the late filing, Schatz failed to state a claim upon which relief may be granted.

¶ 7. The second and third disciplinary decisions also concluded that Schatz had disobeyed an order. The circuit court observed that, although the petition alleged that the second and third conduct reports were retaliation for Schatz's partial success in the outcome of the first conduct report, the petition failed to allege any specific facts showing retaliation. It also determined that there were no procedural errors except possibly one which was harmless, there was sufficient evidence to support the disciplinary decisions, and there was no improper use of hearsay evidence.

¶ 8. Accordingly, having reviewed and analyzed the petition and the supporting materials, the court found that the petition did not state a claim upon which relief may be granted. It therefore dismissed the petition *sua sponte* pursuant to § 802.05(3)(b).

¶ 9. Schatz appealed the circuit court's dismissal asserting that his rights were violated because he had not received notice and an opportunity to be heard by the court before it dismissed his petition. The court of appeals construed this claim as challenging the constitutionality of the procedure that the circuit court used in dismissing Schatz's petition *sua sponte* pursuant to § 802.05(3). It appointed counsel to further address this issue on Schatz's behalf and asked for supplemental briefing from both parties.

¶ 10. The court of appeals reversed the circuit court's dismissal of the petition. It first noted that § 802.05(3) does not address whether a circuit court must provide a prisoner with notice and an opportunity to be heard before it dismisses a prisoner's action or special proceeding *sua sponte* pursuant to § 802.05(3). *State ex rel. Schatz v. McCaughtry*, 2002 WI App 167, ¶ 7, 256 Wis. 2d 770, 650 N.W.2d 67. The court then determined that *State ex rel. Sahagian v. Young*, 141

Wis. 2d 495, 415 N.W.2d 568 (Ct. App. 1987), was controlling and that the lack of prior notice and an opportunity to be heard violated Schatz's right to due process. *Schatz,* 256 Wis. 2d 770, ¶ 14. Having reversed the dismissal on due process grounds, the court of appeals did not address the issue of whether the dismissal violated Schatz's right to equal protection of the law. *Id.,* ¶ 4 n.4.

II

¶ 11. This case presents us with an opportunity to examine a circuit court's use of the PLRA's pleading review procedure to dismiss *sua sponte* a prisoner's petition for a writ of certiorari. The initial issue presented is whether Schatz's constitutional right to due process required that the circuit court give him notice and an additional opportunity to be heard before *sua sponte* dismissing his petition for failure to state a claim. Additionally, we address the issue of whether the *sua sponte* dismissal violated Schatz's constitutional right to equal protection of the law. Each of these issues presents a question of law subject to independent appellate review. *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 629, 579 N.W.2d 698 (1998).

¶ 12. We first describe the initial pleading review procedure created by the PLRA and next examine precedent that is relevant to our due process analysis. Then, we analyze Schatz's due process and equal protection arguments and conclude that the dismissal of Schatz's petition violated neither his right to due process nor his right to equal protection of the law.

¶ 13. The circuit court dismissed Schatz's petition pursuant to the PLRA's initial pleading review procedure which is applicable to actions or special proceedings commenced by a prisoner. The PLRA defines "prisoner" as any person who is incarcerated, imprisoned, arrested, or otherwise detained in a correctional institution or by a law enforcement officer, subject to certain specified exceptions none of which are applicable to this case. *See* Wis. Stat. § 801.02(7)(a)2.

¶ 14. Under the review procedure, when a prisoner commences an action or a special proceeding, the circuit court reviews the prisoner's initial pleading to consider whether there are grounds to dismiss the action or special proceeding without requiring the defendant to answer the pleading. The procedure is codified in Wis. Stat. § 802.05(3)(a) and (b) which provide:

(a) A court shall review the initial pleading as soon as practicable after the action or special proceeding is filed with the court if the action or special proceeding is commenced by a prisoner, as defined in s. 801.02(7)(a)2.

(b) The court may dismiss the action or special proceeding under par. (a) without requiring the defendant to answer the pleading if the court determines that the action or special proceeding meets any of the following conditions:

1. Is frivolous, as determined under s. 814.025(3).

2. Is used for any improper purpose, such as to harass, to cause unnecessary delay or to needlessly increase the cost of litigation.

3. Seeks monetary damages from a defendant who is immune from such relief.

4. Fails to state a claim upon which relief may be granted.

¶ 15. The PLRA was designed to address the costly problems caused by excessive or otherwise inappropriate prisoner-initiated litigation. The objectives of the PLRA include enhancing judicial economy, protecting defendants from needlessly expending resources to defend this type of litigation, and reducing the taxpayer expense associated with such litigation. *See State ex rel. Cramer v. Court of Appeals,* 2000 WI 86, ¶¶ 38–40, 236 Wis. 2d 473, 613 N.W.2d 591.

¶ 16. The initial pleading review procedure advances these objectives by permitting circuit courts to dispose of a prisoner lawsuit at the initial pleading stage of the suit if the circuit court determines that the lawsuit is frivolous, is being used for an improper purpose, seeks monetary damages from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted.

¶ 17. The language of § 802.05(3) does not require a circuit court to give a prisoner notice of an intent to dismiss and an additional opportunity to be heard prior to exercising its authority under § 802.05(3) to dismiss the initial pleading for failure to state a claim. However, this does not end the analysis because Schatz is protected by the Fourteenth Amendment of the United States Constitution and Article 1, Section 1 of the Wisconsin Constitution from being deprived of life, liberty, or property without due process of law. *See Martin v. Richards,* 192 Wis. 2d 156, 198 n. 6, 531 N.W.2d 70 (1995).

¶ 18. Due process requires that there be an opportunity to be heard upon such notice and proceedings as

92

are adequate to safeguard the right for which the constitutional protection is invoked. *Link v. Wabash R.R. Co.,* 370 U.S. 626 (1962). Schatz argues that he has a constitutionally protected right to file a petition for a writ of certiorari and that the circuit court's *sua sponte* dismissal deprived him of this right without adequate notice and opportunity to be heard.

## IV

¶ 19. To provide context for our review of the due process issue, we describe relevant cases that address the right of due process as it applies to *sua sponte* dismissals. No Wisconsin cases directly address the due process concerns raised by a circuit court's *sua sponte* dismissal pursuant to the PLRA for failure to state a claim. However, Wisconsin case law that examines *sua sponte* dismissals outside of the PLRA recognizes that, in certain circumstances, the constitutional right to due process is not offended when a circuit court dismisses a complaint *sua sponte* without giving the plaintiff notice of the court's intent to order such a dismissal and an additional opportunity to be heard.

¶ 20. In *Neylan v. Vorwald,* 124 Wis. 2d 85, 368 N.W.2d 648 (1985), this court examined whether a plaintiff's right to due process was violated by a circuit court's *sua sponte* dismissal based on the plaintiff's failure to prosecute. The case involved two separate actions that were not being actively prosecuted, as reflected in the record. The circuit court *sua sponte* dismissed both actions for failure to prosecute. The plaintiff argued that there was no failure to prosecute as evidenced by letters and telephone calls between the attorneys, most of which did not involve the court. *Id.* at 88–89.

¶ 21. In analyzing the *sua sponte* dismissal, this court noted the following language in Wis. Stat. § 805.03 on which the dismissal was based: "For failure of any claimant to prosecute, . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . ." *Id.* at 90–91 n.5. It then cited the United States Supreme Court decision of *Link v. Wabash Railroad Company,* 370 U.S. 626 (1962), for the proposition that, in certain circumstances, constructive notice of the potential for a *sua sponte* dismissal, as opposed to actual notice, may be sufficient to satisfy due process. Accordingly, the court stated that the case turned on whether § 805.03 provided such constructive notice:

> In this regard, the Court in *Link* stated it may not be necessary to provide actual notice and a hearing where the party has constructive notice through other means, orders or rules of the court as to what the specific consequences of his conduct may be. In this case, because sec. 805.03, Stats., by its language does not provide the constructive notice required under *Link,* actual notice to the parties of the court's dismissal for failure to prosecute is required.

*Neylan,* 124 Wis. 2d at 90.

¶ 22. The *Neylan* court determined that there were no clear standards, such as a specific time period, articulated in Wis. Stat. § 805.03 that would have placed a party on constructive notice as to when the party risks dismissal for failure to prosecute. *Id.* at 90–91. Accordingly, it concluded that the dismissal was improper because the statute did not give adequate notice to a plaintiff as to what would constitute failure to prosecute. *Id.*

¶ 23. The case of *Sahagian v. Young* followed on the heels of *Neylan.* The court of appeals relied on that

case as the basis for its conclusion that the circuit court's *sua sponte* dismissal violated Schatz's right to due process. *Sahagian* was a pre-PLRA case in which a prisoner filed a petition for a writ of certiorari seeking review of a prison disciplinary decision. The circuit court affirmed the prison's disciplinary decision on the merits in a memorandum decision and order.

¶ 24. The court of appeals concluded that Sahagian's right to due process was violated because he was not given an opportunity to make an argument to the court prior to the entry of the order, other than the argument contained in his petition. *Sahagian,* 141 Wis. 2d at 501. The court noted that a petition for a writ of certiorari is generally not intended to fully set forth a petitioner's arguments of the merits, and thus Sahagian was not given an opportunity to be heard at a meaningful time in a meaningful manner. *Id.*

¶ 25. Of more recent vintage are two federal cases that inform our discussion of procedural safeguards to protect against erroneous *sua sponte* dismissals and which satisfy due process requirements. The court in *Curley v. Perry,* 246 F.3d 1278 (10th Cir. 2001) dealt specifically with the due process issue as it relates to the *sua sponte* dismissal of a prisoner's complaint under the federal Prisoner Litigation Reform Act of 1995. That act created a screening process similar to the initial pleading review procedure set forth in § 802.05(3). In *Curley,* a state prisoner in New Mexico filed a complaint in federal district court. The district court construed the lawsuit as asserting an Eighth Amendment violation in which prison officials created unconstitutional conditions of confinement by failing to prevent or monitor inmate-to-inmate correspondence. Such correspondence was alleged to be a mechanism that inmates used to plan violence against other inmates.

¶ 26. The district court dismissed the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) which provides that a federal district court shall dismiss an *in forma pauperis* case at any time the court determines that the action fails to state a claim upon which relief may be granted. The Tenth Circuit Court of Appeals addressed whether the district court violated Curley's due process rights by dismissing his complaint without providing prior notice or an opportunity to amend it. It concluded that the *sua sponte* dismissal of the complaint was not a violation of due process. *Id.* at 1284. The court noted that Curley was not prevented from bringing a meritorious claim. *Id.*

¶ 27. According to the Tenth Circuit, the federal rules of civil procedure provided adequate procedural safeguards to protect against erroneous dismissals. Under the federal rules, a litigant whose complaint has been dismissed with prejudice can file a motion to alter or amend the judgment or a motion for relief from judgment. *Id.* The litigant can also bring an appeal, in which the Court of Appeals conducts plenary review of the sufficiency of the complaint. *Id.*

¶ 28. Another federal case, *Blaney v. West,* 209 F.3d 1027 (7th Cir. 2000), is helpful in analyzing the role of post-judgment relief in satisfying due process requirements. Blaney brought an age discrimination claim against the Department of the Army. His attorney did not properly serve the government. The district court dismissed the case *sua sponte* for failure to serve the defendant. Blaney appealed the dismissal.

¶ 29. In analyzing whether the dismissal was a violation of due process, the Seventh Circuit Court of Appeals observed that, after the dismissal, Blaney's counsel could have filed a Rule 59(e) motion to alter or amend the judgment or a Rule 60(b) motion to relieve

him from a final judgment. *Id.* at 1032. Blaney's attorney did in fact file a motion for relief from judgment, but after consideration the district court ultimately denied the motion. *Id.* The Seventh Circuit concluded that the original *sua sponte* dismissal was not a violation of due process:

> The lack of notice before the entry of judgment certainly did not rise to the level of a violation of due process in this case because Blaney received notice from the judgment itself and had ample opportunity after entry of the judgment to make his case to the district court.

*Id.*

## V

██

¶ 30. In light of the language of § 802.05(3) and the case law regarding due process, we now analyze whether Schatz's right to due process was violated in this case. With respect to notice, it is apparent from *Neylan* and *Link* that, in certain circumstances, constructive notice can be sufficient to satisfy due process. *Neylan,* 124 Wis. 2d at 90; *Link,* 370 U.S. at 632. Schatz does not dispute this. Rather, Schatz argues that constructive notice did not exist in this case. He asserts that, according to *Link,* the existence of constructive notice turns "to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link,* 370 U.S. at 632. Schatz contends that § 802.05(3) does not provide such constructive notice. We disagree.

¶ 31. The language of § 802.05(3) states that, with respect to an action commenced by a prisoner, the court "shall review the initial pleading as soon as

practicable" and "may dismiss the action or special proceeding . . . without requiring the defendant to answer the pleading if the court determines that the action or special proceeding . . . [f]ails to state a claim upon which relief may be granted." This expressly puts prisoners on notice that a circuit court will examine the initial pleading and may, without further briefing or hearing on the matter, dismiss the complaint if the court determines that the initial pleading fails to state a claim. Accordingly, Schatz had constructive notice that his petition could be dismissed if it did not state a claim.

¶ 32. Schatz and the court of appeals rely heavily on *Sahagian* to support the position that due process requires that, despite the notice created by § 802.05(3), the court give additional notice of its intent to dismiss and an additional opportunity to be heard. This reliance is misplaced. A key distinction between the circuit court's ruling in *Sahagian* and the dismissal that occurred in this case is that the circuit court in *Sahagian* dismissed the petition before the enactment of the PLRA. Unlike here, there was no statute to be applied by the *Sahagian* court that specifically authorized the *sua sponte* dismissal ordered by the court. As a result, Sahagian had no constructive notice of the potential that the court would dismiss his petition. Thus, the court of appeals erred in concluding that *Sahagian* controlled the outcome of this case and required a finding that Schatz's due process rights were violated.

¶ 33. In addition to the constructive notice created by § 802.05(3), Schatz's right to due process is further protected by the existence of procedural safeguards against erroneous *sua sponte* dismissals. An initial safeguard is the standard that a court is required

to apply when considering whether to dismiss for failure to state a claim. The standard for deciding whether a certiorari petition is sufficient to order a return is the same standard used to decide whether a complaint states a claim. *State ex rel. Luedtke v. Bertrand,* 220 Wis. 2d 574, 580, 583 N.W.2d 858 (Ct. App. 1998). It requires that the circuit court construe the petition liberally and consider dismissal only if it is quite clear that no relief can be had under any legal theory. *Id.* at 581–82; *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985); *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979).

¶ 34. In dismissing a prisoner's complaint for failure to state a claim, the circuit court may consider whether the petition can be salvaged by amendment. In *Wiegal v. Sentry Indemnity Company,* 94 Wis. 2d 172, 184–85, 287 N.W.2d 796 (1980) (citation omitted), this court stated that refusal to allow an amendment would be an erroneous exercise of discretion: (1) when justice requires an amendment of the pleadings, *or* (2) when it appears that an omission is material and that such omission or failure is through mistake, inadvertence, surprise, or excusable neglect.

¶ 35. Further, procedural safeguards exist in that the dismissal order provides notice to the prisoner of the reason for the dismissal and the prisoner can request that the circuit court reexamine its decision to dismiss the petition. This can be done through a request for reconsideration or a motion for relief from the order under Wis. Stat. § 806.07. As recognized in *Curley* and *Blaney,* these post-judgment opportunities to present arguments before the trial court are a source of

ensuring that an individual's right to due process is protected. *Curley,* 246 F.3d at 1284; *Blaney,* 209 F.3d at 1032.

¶ 36. In addition, in cases where the dismissal is without prejudice and the time limitation for filing the petition has not expired, a prisoner could re-file the petition. In the case at bar, the circuit court did not state whether the petition was being dismissed with or without prejudice. At oral argument, the State acknowledged that the complaint in this case was dismissed without prejudice.[4] We conclude that, in the circumstances of this case, the dismissal of the petition with respect to the second and third disciplinary decisions was without prejudice.[5] Generally, when a dismissal for failure to state a claim does not specify whether it is

---

[4] At oral argument, the following discussion occurred:

Chief Justice Abrahamson: The decision that Judge Callaway gave here, isn't it on the merits?

Assistant Attorney General: No, it appears because of the record and because of the extensiveness of the decision, one might think at first blush it was. But it was a motion to dismiss for failure to state a claim.

Chief Justice Abrahamson: OK, so it's without prejudice is what you're saying. Without prejudice because it's a motion to dismiss, doesn't mean you can't file a new complaint. Is that right?

Assistant Attorney General: Exactly. Mr. Schatz in this case could have done a number of things. He could have sought to amend his petition. He could have sought a reconsideration of the decision by Judge Callaway. He could have sought relief from judgment.

[5] With regard to the first disciplinary decision, the circuit court concluded that Schatz failed to state a claim because he had not filed the petition within the statutory time period. It is unclear from the record whether Schatz would be able to advance any argument that could cure this defect.

with or without prejudice and the defects in the dismissed complaint can be cured by a subsequent complaint, the dismissal should not be treated as a bar to the filing of the subsequent complaint. *Taylor v. Matteson,* 86 Wis. 113, 56 N.W. 829 (1893).

¶ 37. In many circumstances in which the petitioner timely filed the original petition, the petitioner will not be foreclosed by the 45–day statute of limitations from having an opportunity to re-file after a dismissal without prejudice. Under Wis. Stat. § 893.13(2), the statute of limitations will be tolled from the date the petitioner filed the original petition until the "final disposition" of the petition as defined in Wis. Stat. § 893.13(1).[6]

---

[6] Wisconsin Stat. § 893.13 provides:

893.13 Tolling of statutes of limitation.

(1) In this section and ss. 893.14 and 893.15 "final disposition" means the end of the period in which an appeal may be taken from a final order or judgment of the trial court, the end of the period within which an order for rehearing can be made in the highest appellate court to which an appeal is taken, or the final order or judgment of the court to which remand from an appellate court is made, whichever is latest.

(2) A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

(3) If a period of limitation is tolled under sub. (2) by the commencement of an action and the time remaining after final disposition in which an action may be commenced is less than 30 days, the period within which the action may be commenced is extended to 30 days from the date of final disposition.

101

¶ 38. Finally, the prisoner has the right to appeal the dismissal order. Wis. Stat. § 808.03 provides that ". . . a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law."

¶ 39. In examining the procedural avenues, we note that a dismissal for failure to state a claim is a dismissal that is counted toward the three strikes provision in § 801.04(7)(a), which creates additional restrictions on the ability of prisoners to file future lawsuits. Obviously, a request for reconsideration or a motion for relief from judgment will not result in an additional strike. Further, to the extent a prisoner may re-file a petition that has been dismissed without prejudice for failure to state a claim, any subsequent dismissal of the re-filed petition will not result in an additional strike, provided that all of the claims set forth in the re-filed petition arose out of the transaction, occurrence, or event set forth in the original petition.

¶ 40. To notify prisoners of the procedural safeguards that exist to protect against erroneous *sua sponte* dismissals, we recommend that a citation to this decision be added to the form dismissal order used by Wisconsin circuit courts in prisoner litigation cases.

VI

¶ 41. Finally, Schatz argues that the *sua sponte* dismissal of his petition violated his constitutional right to equal protection of the law under the Fourteenth Amendment of the United States Constitution and Article 1, Section 1 of the Wisconsin Constitution.

Generally, unless a legislative classification affects a fundamental right or is based on a suspect criterion, the standard used in reviewing the constitutionality of the legislative classification is the rational basis test, that is, whether the classification bears a rational relation to some legitimate end. *State ex rel. Kahn v. Sullivan,* 2000 WI App 109, ¶ 9, 235 Wis. 2d 260, 613 N.W.2d 203; *Group Health Coop. of Eau Claire v. Wisconsin Dep't of Revenue,* 229 Wis. 2d 846, 856, 601 N.W.2d 1 (Ct. App. 1999).

¶ 42. Schatz concedes that the rational basis test is the appropriate test to analyze his equal protection claim. He argues that this test is not satisfied because no legitimate end is advanced by denying prisoners the procedural protections that are available to non-prisoner litigants. We disagree.

¶ 43. The State has a legitimate interest in deterring non-meritorious lawsuits and preserving judicial resources. *Kahn,* 235 Wis. 2d 260, ¶ 10. As noted above, the objectives of the PLRA include enhancing judicial economy, protecting defendants from needlessly expending resources to defend inappropriate prisoner-initiated litigation and reducing the taxpayer expense associated with such litigation. *See Cramer,* 236 Wis. 2d 473, ¶¶ 38–40. The initial pleading review procedure advances these objectives by permitting circuit courts to dispose of a prisoner lawsuit at the initial pleading stage of the suit if the circuit court determines that the lawsuit is frivolous, is being used for an improper purpose, seeks monetary damages from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted.

¶ 44. Distinguishing between prisoners and non-prisoners is a rational means of limiting meritless litigation because "it has been recognized that prison-

ers . . . account for a disproportionate amount of meritless litigation." (citations omitted) *Kahn,* 235 Wis. 2d 260, ¶ 10. In concluding that the federal PLRA was rationally related to the legitimate state interest of curbing abuse of the federal judicial system, the Fourth Circuit Court of Appeals noted the differences between prisoners and non-prisoners that create a far greater opportunity for abuse of the judicial system:

> Prisoners are not similarly situated to non-prisoners. . . . They often have free time on their hands that other litigants do not possess. . . . [T]here has been a far greater opportunity for abuse of the federal judicial system in the prison setting.

*Roller v. Gunn,* 107 F.3d 227, 234 (4th Cir. 1997).

¶ 45. We therefore determine that the classification created by the PLRA, as applied in this case, bears a rational relation to a legitimate end. Accordingly, we conclude that the dismissal of Schatz's petition did not violate his right to equal protection of the law.

¶ 46. Finally, Schatz asserts that, if we do not affirm the court of appeals decision, we should remand this case to the court of appeals to address the issue of whether the circuit court erred in denying his request for substitution of judge. Although not argued or briefed in this court, Schatz maintains the issue is preserved because he raised it in his initial briefs at the court of appeals. The State counters that this issue has been waived. Because the court of appeals decided the case on other grounds, it did not discuss whether the denial was error or whether Schatz waived his right to appeal this issue. We therefore remand to the court of appeals for such determinations.

¶ 47. In sum, we conclude that the circuit court's *sua sponte* dismissal of Schatz's petition for a writ of certiorari did not violate his right to due process or his right to equal protection of the law. Here, due process is satisfied because of the constructive notice created by Wis. Stat. § 802.05(3)(b), together with the post-dismissal procedures available to the prisoner. Equal protection is satisfied because the application of the PLRA's initial pleading review procedure in this case satisfies the rational basis test. Accordingly, we reverse the court of appeals decision and remand to the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the court of appeals.