COURT OF APPEALS
DECISION
DATED AND FILED

January 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP1220**

STATE OF WISCONSIN

Cir. Ct. No.  2023CV3097

IN COURT OF APPEALS
DISTRICT IV

GREAT LAKES WILDLIFE ALLIANCE,

   PETITIONER-APPELLANT,

 V.

WISCONSIN NATURAL RESOURCES BOARD AND
WISCONSIN DEPARTMENT OF NATURAL RESOURCES,

   RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. WISCONSIN STAT. § 29.185(1m) (2023-24) requires the Department of Natural Resources ("the Department") to allow and regulate the hunting and trapping of wolves and to implement a wolf management plan when wolves are not listed as endangered on the federal or Wisconsin endangered lists.[1] In 2021, the Department began drafting a wolf management plan, which the Natural Resources Board ("the Board") approved in October 2023.[2]

¶2 Great Lakes Wildlife Alliance ("Great Lakes") is a non-profit corporation that is comprised of Wisconsin citizens and that opposes the hunting of wolves in Wisconsin. Great Lakes petitioned for judicial review of the wolf management plan, alleging that the Department and the Board (collectively, "the respondents") violated various laws when developing and adopting the plan. Specifically, Great Lakes alleged violations of Wisconsin's open meetings law; WIS. STAT. ch. 227 (also referred to as the Wisconsin Administrative Procedures Act); various constitutional provisions, including the Due Process and Equal Protection Clauses of the Wisconsin Constitution; the public trust doctrine; and the right to hunt protected by article I, section 26 of the Wisconsin Constitution. The respondents moved to dismiss Great Lakes' petition for failure to state a claim upon which relief can be granted. The circuit court granted that motion, and Great Lakes appeals. We affirm.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] The Department is under the "direction and supervision" of the Board. *See* WIS. STAT. § 15.34(1).

## BACKGROUND

¶3      The facts in the discussion that follows, which we accept as true for purposes of our review, are derived from Great Lakes' petition for judicial review unless otherwise noted.

¶4      WISCONSIN STAT. § 29.185(1m) states: "If the wolf is not listed on the federal endangered list and is not listed on the state endangered list, the [D]epartment shall allow the hunting and trapping of wolves and shall regulate such hunting and trapping as provided in this section and shall implement a wolf management plan."   Gray wolves were removed from the federal and state endangered lists in 2021 and, pursuant to its duties under § 29.185(1m), the Department began drafting a wolf management plan that same year.   The Department prepared a draft wolf management plan and provided a period for public comment.   During the public comment period, Great Lakes submitted comments that challenged the draft wolf management plan and the scientific assumptions and methodologies used in preparing the plan.

¶5      The Wisconsin Wildlife Federation, the Wisconsin Association of Sporting Dogs, and Wisconsin Wolf Facts hosted three "listening sessions" for their members regarding the draft wolf management plan.   The listening sessions were recorded and sent to the Department.   Three of the Board's seven members attended the first session in February 2023, two attended the second session in April 2023, and one attended the third session in July 2023.   Public notice was not provided regarding these sessions, they were not made open to the public, and the second and third sessions were held after the public comment period for the draft wolf management plan had ended.   The draft wolf management plan was revised in response to comments made at these listening sessions.

¶6      The Board approved the wolf management plan, as revised, in October 2023.  In submitting the wolf management plan to the Board for approval, the Department stated that the plan "is intended to serve as both a guidance document for the management of wolves in Wisconsin and as an outreach tool to better inform and engage the public on wolf ecology and management issues."  The Department further described the plan as providing "a comprehensive summary of wolf ecology and management in Wisconsin" and "a pragmatic vision to wolf management and stewardship."[3]

¶7      Great Lakes petitioned for judicial review of the wolf management plan.  Great Lakes alleged that: the Board violated Wisconsin's open meetings law, WIS. STAT. § 19.83(1), by holding meetings that were not open to the public and without public notice; the respondents violated Wisconsin's Administrative Procedures Act by disregarding public comments submitted by Great Lakes, as well as by soliciting and accepting public comments at private events not open to the public and from favored groups after the close of the public comment period; the respondents violated Great Lakes' rights under the Wisconsin Constitution to due process, equal protection, freedom of speech, freedom of association, and freedom of petition by disregarding Great Lakes' comments; the respondents violated their duties under the public trust doctrine to conserve and manage

---

[3] We observe that Great Lakes' petition for judicial review does not contain allegations regarding the substance of the wolf management plan.  However, the respondents argue, and Great Lakes does not dispute, that the wolf management plan and related documents may be considered as matters of record in government files.  *See Sisson v. Hansen Storage Co.*, 2008 WI App 111, ¶11, 313 Wis. 2d 411, 756 N.W.2d 667 ("We may take judicial notice of matters of record in government files."); *see also* WIS. DEP'T OF NAT. RES., *Nat. Res. Bd., October 2023 Agenda and Meeting Materials*, https://dnr.wisconsin.gov/About/NRB/2023/October (last visited Jan. 26, 2026) (providing a link for the wolf management plan and related materials in agenda item 5.F).

wolves; and the respondents violated the right to hunt protected by article I, section 26, of the Wisconsin Constitution.

¶8      The respondents moved to dismiss Great Lakes' petition for failure to state a claim upon which relief can be granted and asked the circuit court to dismiss the petition with prejudice because its defects could not be cured by a subsequent petition.  The court granted the motion and dismissed Great Lakes' petition with prejudice.  Great Lakes appeals.[4]

## DISCUSSION

¶9      Great Lakes argues that the circuit court erred by dismissing Great Lakes' claims and by doing so with prejudice.  We conclude that the court properly dismissed Great Lakes' petition because Great Lakes failed to state a claim upon which relief can be granted.  We additionally conclude that the court did not erroneously exercise its discretion when it dismissed Great Lakes' petition with prejudice.

---

[4] Great Lakes and the respondents cite to the appendices that were submitted with their briefs without including parallel cites to the appellate record that was compiled by the clerk of the circuit court.  We remind counsel that the appendix is not the record, *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322, and that the rules of appellate procedure require parties to include appropriate citations to the record, *see* WIS. STAT. RULE 809.19(1)(d)-(e).  Here, we have not attempted to verify that all of the documents in the parties' appendices are actually part of the record.  To the extent they are not, this would also violate RULE 809.19(1)(d).  *See also Roy v. St. Luke's Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (explaining that appellate court is limited to matters in the record and will not consider any materials in an appendix that are not in the record and stating that "[w]e have no duty to scour the record to review arguments unaccompanied by adequate record citation").

*I. The circuit court properly dismissed Great Lakes' petition.*

¶10 Whether a complaint or petition for judicial review states a claim upon which relief can be granted is a question of law that we review independently. *See **Data Key Partners v. Permira Advisers LLC**,* 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. We accept as true the factual allegations in the complaint or petition. *Id.*, ¶18. However, "legal conclusions stated in the complaint [or petition] are not accepted as true, and they are insufficient to enable a complaint [or petition] to withstand a motion to dismiss." *Id.*, ¶19. A complaint or petition "must plead facts, which if true, would entitle the plaintiff to relief." *Id.*, ¶21.

¶11 Renewing its arguments made before the circuit court, Great Lakes argues that each of its claims were sufficiently pled. We reject Great Lakes' arguments as to each claim.

*A. Open Meetings Law*

¶12 Great Lakes argues that it sufficiently pled a violation of Wisconsin's open meetings law with respect to the listening sessions. The open meetings law states that "[e]very meeting of a governmental body shall be preceded by public notice as provided in [WIS. STAT. §] 19.84, and shall be held in open session." WIS. STAT. § 19.83(1). A "meeting" is "the convening of members of a governmental body for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body." WIS. STAT. § 19.82(2). We review the interpretation and application of the open meetings law independently. *See **State ex rel. Krueger v. Appleton Area Sch. Dist. Bd. of Educ.**,* 2017 WI 70, ¶20, 376 Wis. 2d 239, 898 N.W.2d 35.

¶13    Our supreme court has stated that for the open meetings law to apply, two requirements must be met. "First, there must be a purpose to engage in governmental business, be it discussion, decision or information gathering. Second, the number of members present must be sufficient to determine the parent body's course of action regarding the proposal discussed." *State ex rel. Newspapers, Inc. v. Showers*, 135 Wis. 2d 77, 102, 398 N.W.2d 154 (1987). The parties agree that Great Lakes alleged sufficient facts to satisfy the first of these requirements. The parties disagree as to the second requirement, which we refer to as the "numbers requirement." For the reasons that follow, we conclude that Great Lakes did not allege that enough members were present at any of the listening sessions to determine the Board's course of action regarding the draft wolf management plan. Accordingly, Great Lakes did not allege sufficient facts to trigger the open meetings law and the circuit court properly dismissed Great Lakes' open meetings claim. We begin by briefly discussing the relevant statutory and case law governing the numbers requirement before turning to the facts here.

¶14    "If one-half or more of the members of a governmental body are present, the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body," *i.e.*, it is rebuttably presumed that a "meeting" occurred. WIS. STAT. § 19.82(2). However, when "less than one-half of the total members" meet, the party alleging a violation of the open meetings law bears the burden of showing that a meeting occurred. *Showers*, 135 Wis. 2d at 102.

¶15    In *Showers*, our supreme court considered whether the open meetings law applied to a meeting of four members of an eleven-member commission, when a two-thirds vote was necessary to pass the budget proposal at issue. *Id.* at 80. The *Showers* court concluded that the open meetings law applied

because the four members constituted a "negative quorum": because a supermajority vote was needed for the budget proposal, four members could defeat the proposal and determine the commission's course of action. *Id.* at 102-03.

¶16  In a later case discussing *Showers*, we explained that, although a gathering of one-half or more of the body's membership is rebuttably presumed to be a meeting for purposes of the open meetings law, "sometimes, the meeting can be less than one-half of the membership and still trigger the open meetings law. This occurs when the meeting consists of a 'negative quorum.'" *Plourde ex rel. State v. Habhegger*, 2006 WI App 147, ¶10, 294 Wis. 2d 746, 720 N.W.2d 130 (*citing Showers*, 135 Wis. 2d at 103-04). In *Plourde*, we relied on *Showers* to address whether the open meetings law applied to a meeting of six members of a fourteen-member committee. *Plourde*, 294 Wis. 2d 746, ¶¶2, 11. We concluded that it did not: the numbers requirement was not satisfied because the meeting of six members was "neither a presumptive quorum nor … a negative quorum." *Id.*, ¶11.

¶17  Here, the Board is comprised of seven members, WIS. STAT. § 15.34(2)(a), and Great Lakes did not allege, nor does it argue on appeal, that a supermajority is required to exercise the Board's duties. Great Lakes alleged that three Board members attended a listening session in February 2023, that at least two members attended a listening session in April 2023, and that at least one member attended a listening session in July 2023. Great Lakes alleged, and argues on appeal, that these listening sessions violated the open meetings law because they were not properly noticed or made open to the public.

¶18  These allegations fail to satisfy the numbers requirement. Great Lakes acknowledges that *Plourde* interpreted *Showers* to require at least a

8

negative quorum to satisfy the numbers requirement. *See Plourde*, 294 Wis. 2d 746, ¶¶10, 11. However, Great Lakes appears to argue that *Plourde* misinterpreted *Showers*, and that we are not bound by our determination in *Plourde* that a negative quorum is required. For example, Great Lakes argues that "there [is no] basis to conclude that *Plourde* should be read to modify *Showers*, since the higher court's decision necessarily prevails" and that "the circuit court incorrectly interpreted *Plourde* and *Showers* to require a negative quorum" because *Showers* "suggests that a negative quorum is not the proper standard." Although we are not persuaded that the *Plourde* court misconstrued or sought to "modify" *Showers*, more importantly, *Plourde* is binding, including its interpretation of *Showers*. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court … has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

¶19 In response to the respondents' reliance on *Cook*, Great Lakes attempts to distinguish *Plourde* on the basis that the appeal in that case was from a jury verdict and "involve[d] a committee of one." We reject these arguments. As to the jury verdict issue, Great Lakes does not explain why this distinction matters or how it factored into the relevant analysis in *Plourde*. And Great Lakes' argument that *Plourde* is substantively distinguishable because it involved a decision by a single-member governmental body is likewise unpersuasive. As stated, the relevant analysis in *Plourde* concerned a meeting of six members of a fourteen-member committee. *Plourde*, 294 Wis. 2d 746, ¶¶2, 11. To be sure, the *Plourde* court also noted that the governmental business at issue—the issuance of a building permit—was in fact the province of a governmental body that was comprised of a single member, and the court concluded that "the open meetings law is not meant to apply to single-member governmental bodies." *Id.*, ¶¶9, 12.

9

However, the plaintiff in *Plourde* specifically "alleged [that] six members of the [fourteen-member body] violated the open meetings law," *id.* at ¶4, and this court expressly addressed and rejected that contention, concluding that the meeting of six members of the fourteen-member body did not meet the numbers requirement because it did not satisfy the minimum threshold of a negative quorum as required by *Showers*. *Plourde*, 294 Wis. 2d 746, ¶¶9, 10. Accordingly, Great Lakes' fails to distinguish *Plourde*, and we are bound by that precedent.

¶20    Consistent with *Plourde* and *Showers*, the numbers requirement is not satisfied in the absence of at least a negative quorum. Thus, to the extent that Great Lakes appears to concede that its petition did not allege sufficient facts showing a negative quorum, Great Lakes cannot prevail on appeal. However, Great Lakes may also mean to argue that a negative quorum may be established in a manner other than that set out in *Showers* and *Plourde* or, alternatively, that its petition alleged sufficient facts to establish the threshold negative quorum under these precedents. These arguments are unpersuasive.

¶21    In arguing that a sufficient number of Board members were present at these listening sessions to satisfy the numbers requirement, Great Lakes relies on WIS. STAT. § 15.07(4), which states that "[a] majority of the membership of a board constitutes a quorum to do business and … a majority of a quorum may act in any matter within the jurisdiction of the board." Great Lakes argues that if two or three members of the seven-member Board were absent, then a meeting of three Board members would constitute a majority sufficient to determine the Board's course of action. Great Lakes also argues that, even if just one member was absent, then three members would constitute a negative quorum.

¶22    We reject this argument because it does not square with either *Showers* or *Plourde*.  In both of those cases, whether the numbers requirement was satisfied was determined in reference to the governmental body's *total membership*.  *See Showers*, 135 Wis. 2d at 97-102; *Plourde*, 294 Wis. 2d 746, ¶10 ("[A] gathering of one-half or more *of the body's membership* is rebuttably presumed to be a meeting for the purpose of exercising the body's authority." (emphasis added)).  In contrast, here, Great Lakes argues that whether there were sufficient members of a government body to satisfy the numbers requirement should be determined in reference to the body's *quorum*.  Again, this is inconsistent with the analyses in *Showers* and *Plourde*.  *See also* WIS. STAT. § 19.82(2) (using the total membership of a body for purposes of its presumption regarding whether a meeting occurred: "If one-half or more of the members of a governmental body are present, the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body.").

¶23    In addition, we observe that Great Lakes' theory would expand the applicability of the open meetings law dramatically in some instances.  Here, for example, the Board's quorum for conducting business is four members, which means that the numbers requirement would be satisfied any time two members met, because that would constitute a negative quorum in the event that only four members of the Board were to meet.  Great Lakes points to nothing in the text of the open meetings law nor in its legislative history that reflects an intent to apply the open meetings law this broadly based on potential absences, the likelihood of which is unclear.  *See Showers*, 135 Wis. 2d at 87-102 (stating that the open meetings law is ambiguous regarding how many members of a governmental body must be present for a "meeting" to occur and discussing the "the legislative

11

history, purpose, and broader context" of the open meetings law in resolving this issue).

¶24   Great Lakes also argues that "even when all seven members are present, three members could still exert a strong influence." This argument fails because it does not account for the relevant standard under *Showers*: in order for the open meetings law to apply, "the number of members present must be sufficient to determine the parent body's course of action regarding the proposal discussed." *Id.* at 102. The ability to "exert a strong influence" is not enough. Moreover, the case that Great Lakes cites in support of this argument—*State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 239 N.W.2d 313 (1976), *superseded on other grounds by statute as recognized in Showers*—in fact rejected this very argument. *See Conta*, 71 Wis. 2d at 688.

¶25   Finally, Great Lakes appears to argue that because it alleged that *at least* two members attended the private listening session in April, and that *at least* one member attended the session in July 2023, it should be allowed the opportunity to seek discovery regarding which other members might have attended these sessions. However, Great Lakes cannot "rely on hypothetical, speculative 'facts' that might or might not be supplied by the discovery process." *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶46, 284 Wis. 2d 307, 700 N.W.2d 180.

¶26   In sum, as the circuit court properly determined, Great Lakes failed to adequately plead its open meetings claim because it failed to allege sufficient facts to satisfy the numbers requirement.

### B. Wisconsin Administrative Procedures Act

¶27 Great Lakes argues that the circuit court erred in concluding that Great Lakes lacks standing under WIS. STAT. § 227.40(1) to bring its claims for violations of WIS. STAT. ch. 227, Wisconsin's Administrative Procedures Act. *See Wisconsin Legislature v. Palm*, 2020 WI 42, ¶34, 391 Wis. 2d 497, 942 N.W.2d 900 (stating that Wisconsin's Administrative Procedures Act is codified at ch. 227). "'Whether a party has standing is a question of law that we review independently.'" *Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342 (quoting *City of Mayville v. DOA*, 2021 WI 57, ¶15, 397 Wis. 2d 496, 960 N.W.2d 416). We conclude that Great Lakes does not have standing under § 227.40(1).

¶28 We begin by addressing the proper standard for determining whether Great Lakes has standing under WIS. STAT. § 227.40(1). The circuit court applied the standard from *Friends*, which set forth a two-prong test for standing. First, there must be "'injury in fact'"—*i.e.*, the plaintiff must "'allege[] injuries that are a direct result of the agency action.'" *Friends*, 402 Wis. 2d 587, ¶21 (quoted source omitted). And second, the plaintiff "must allege an injury 'to an interest which the law recognizes or seeks to regulate or protect.'" *Id.*, ¶28 (quoted source omitted).

¶29 Great Lakes argues that the test from *Friends*—specifically, the second prong of that test—does not apply here because Great Lakes sought judicial review of a rule or guidance document pursuant to WIS. STAT. § 227.40, rather than an agency decision pursuant to WIS. STAT. § 227.52.[5] In support of

---

[5] Great Lakes initially brought claims under WIS. STAT. § 227.52, which applies to "administrative decisions," and under WIS. STAT. § 227.40. However, Great Lakes conceded in its response to the motion to dismiss that it could not bring its claims under § 227.52.

this argument, Great Lakes argues that the second prong of the test for standing in *Friends* is rooted in the statutory language of § 227.52 and WIS. STAT. § 227.53, and that the *Friends* court was not addressing a challenge brought under § 227.40, as Great Lakes brought here, but rather a challenge brought under § 227.52. *See Friends*, 402 Wis. 2d 587, ¶¶26-28. Great Lakes points out that § 227.52 allows for judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person," and § 227.53 states that "any person aggrieved by a decision specified in [§] 227.52 shall be entitled to judicial review." In contrast, § 227.40(1) uses different language—it states that "[t]he court shall render a declaratory judgment in the action only when … the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff." Because these statutes use different language, and because Great Lakes relied on § 227.40 rather than on § 227.52, Great Lakes argues that *Friends* is distinguishable and that its test for standing does not apply.

¶30 However, Great Lakes' arguments are squarely foreclosed by the fact that our supreme court has applied the two-prong test for standing articulated in *Friends* to a challenge brought under WIS. STAT. § 227.40. *See Teigen v. WEC*, 2022 WI 64, ¶¶19-29, 403 Wis. 2d 607, 976 N.W.2d 519, *overruled on other grounds by Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429. In *Teigen*, memoranda created by the Wisconsin Election Commission regarding the use of drop boxes in elections were challenged under § 227.40, and one of the intervenors argued that the challengers lacked standing. *Teigen*, 403 Wis. 2d 607, ¶¶1, 14. The *Teigen* court applied the test for standing from *Friends*, which it described as applying broadly "to challenge an agency action under [WIS. STAT.] chapter 227 of the Wisconsin statutes." *Id.*, ¶19. And

14

regarding the second prong, specifically—the prong that Great Lakes argues does not apply here—the *Teigen* court, quoting *Friends*, concluded that the prong had been met because "'[t]he law recognizes' and 'seeks to ... protect' the Wisconsin voters' right to vote." *Teigen*, 403 Wis. 2d 607, ¶29. In stating that the second prong was met under *Friends*, the *Teigen* court, quoting the language from § 227.40(1), identified WIS. STAT. § 6.84(1) as the statute that gave rise to legal rights and privileges that the agency memoranda interfered with or impaired, or threatened to interfere with or impair. *Teigen*, 403 Wis. 2d 607, ¶¶28-29, 35. We are bound by what the *Teigen* court stated regarding standing, and we thus conclude that the test from *Friends* applies here.

¶31    Applying the test from *Friends*, we conclude that Great Lakes lacks standing: Great Lakes does not satisfy the second prong because it fails to identify a legal right or privilege that the wolf management plan interferes with or impairs, or threatens to interfere with or impair.

¶32    As stated, under the second prong, a plaintiff "must allege an injury 'to an interest which the law recognizes or seeks to regulate or protect.'" *Friends*, 402 Wis. 2d 587, ¶28 (quoted source omitted). In other words, "the second prong of the standing test requires the allegedly adversely affected interest to be one protected, recognized, or regulated by an identified law." *Id.*, ¶31. Here, the only law that Great Lakes identifies as protecting its asserted interests is WIS. STAT. § 227.40. However, it is § 227.40 itself that requires "that the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff," which our supreme court has employed the two-prong test from *Friends* to determine. *See Teigen*, 412 Wis. 2d 594, ¶¶19-29. As the respondents argue, if § 227.40(1) itself could be invoked to meet the second prong of the test for standing, then there

would be no second prong for challenges to agency rules and guidance. Great Lakes' interpretation would thus effectively read the requirement stated in § 227.40(1) "that the rule or guidance document or its threatened application interfere[] with or impair[], or threaten[] to interfere with or impair, the legal rights and privileges of the plaintiff" out of the statute. We further observe that Great Lakes does not identify, nor have we discovered, any case in which § 227.40(1) has been determined to protect, recognize, or regulate an interest, or to interfere with, impair, or threaten to interfere with or impair a legal right or privilege in order to confer standing.[6]

¶33    Moreover, even if we assume that Great Lakes is correct that the test for standing from *Friends* does not apply and we instead apply the language from WIS. STAT. § 227.40(1), we similarly conclude that Great Lakes lacks standing. As stated, § 227.40(1) provides that "[t]he court shall render a declaratory judgment in the action only when … the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff." Although Great Lakes makes much of the fact that this language is different from the language that the *Friends* court interpreted from WIS. STAT. §§ 227.52 and 227.53, Great Lakes does not explain why this difference in language is meaningful. And indeed, when we simply apply the language from § 227.40(1), we reach the same conclusion as we do under the test from *Friends*: Great Lakes lacks standing because it does not

---

[6] In Great Lakes' reply brief, it identifies various other provisions of WIS. STAT. ch. 227 that it argues protects its interest in a fair public process. We do not address this argument because it was raised for the first time in Great Lakes' reply brief. *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) ("We do not address issues raised for the first time in a reply brief.").

identify a legal right or privilege that the wolf management plan interferes with or impairs, or threatens to interfere with or impair.

¶34     Because we conclude that Great Lakes fails to allege an injury to an interest which the law recognizes or seeks to regulate or protect and fails to identify a legal right or privilege that the wolf management plan interferes with or impairs, or threatens to interfere with or impair, we conclude that Great Lakes lacks standing to bring its claims under WIS. STAT. § 227.40(1).[7]

### C.  Due Process and Equal Protection

¶35     Great Lakes argues that the circuit court erred by dismissing Great Lakes' due process and equal protection claims.  We reject Great Lakes' argument because it overlooks the relevant standard of review and because it is undeveloped and not supported with legal authority.

¶36     Great Lakes challenges the circuit court's legal analysis, which Great Lakes argues was "cursory and incomplete, and therefore inadequate as a reasoned basis for dismissal."  However, we review the court's legal conclusions de novo, and on appeal Great Lakes must show that its constitutional claims were adequately pled as a matter of law.  Here, although Great Lakes takes issue with the court's analysis, Great Lakes does not develop an argument supported by legal authority as to why its constitutional claims are sufficient as a matter of law.  For

---

[7] The respondents also argue that Great Lakes' claims alleging violations of Wisconsin's Administrative Procedures Act would fail even if Great Lakes had standing under WIS. STAT. § 227.40 to raise those claims because Great Lakes fails to identify any statute in WIS. STAT. ch. 227 that imposes substantive or procedural requirements to the wolf management plan.  We do not address this argument because we conclude that Great Lakes lacks standing. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive).

example, Great Lakes asserts that it alleged a pattern of bias and viewpoint discrimination. But Great Lakes does not otherwise argue that this is sufficient to state a claim for relief under theories of due process or equal protection and it provides no legal authority in support of its assertions. Accordingly, we reject Great Lakes' arguments regarding its due process and equal protection claims. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (explaining that this court need not consider arguments that are unsupported by legal authority or are otherwise undeveloped); ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.").

### D. Public Trust Doctrine

¶37 Great Lakes argues that the circuit court improperly dismissed its claim under the public trust doctrine. We conclude that the court properly dismissed this claim.

¶38 Wisconsin's public trust doctrine is rooted in article IX, section 1 of the Wisconsin Constitution, which requires that the state hold navigable waters in trust for the public. ***Rock-Koshkonong Lake Dist. v. DNR***, 2013 WI 74, ¶71, 350 Wis. 2d 45, 833 N.W.2d 800. Article IX, section 1 states:

> The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.

¶39    Great Lakes describes its public trust claim as being "that the [r]espondents, by violating the [open meetings law], [Wisconsin's Administrative Procedures Act], and the constitutional rights of [Great Lakes], has also thereby violated their trustee obligations to manage wildlife, fish, and waterways to preserve the public right to access and enjoy these natural resources in perpetuity." However, we have already rejected Great Lakes' arguments regarding these other claims; accordingly, we also reject Great Lakes' reliance on these claims to support their public trust doctrine claim.

¶40    Great Lakes also argues that the public trust doctrine applies broadly to wildlife.  In support of this argument, Great Lakes relies on language from two cases.  First, Great Lakes quotes the following language from ***R.W. Docks & Slips v. State***, 2001 WI 73, ¶19, 244 Wis. 2d 497, 628 N.W.2d 781: "Although the public trust doctrine originally existed to protect commercial navigation, it has been expansively interpreted to safeguard the public's use of navigable waters for purely recreational purposes such as boating, swimming, fishing, hunting, recreation, and to preserve scenic beauty."  Second, Great Lakes quotes the following language from ***Lake Beulah Management District v. DNR***, 2011 WI 54, ¶32, 335 Wis. 2d 47, 799 N.W.2d 73: "'This "public trust" duty requires the state not only to promote navigation but also to protect and preserve its waters for fishing, hunting, recreation, and scenic beauty.'"  ***Id.***, ¶32 (quoted source omitted). Although these cases support the proposition that the public trust doctrine requires the state to protect navigable waters so that they may be used for hunting, these cases do not support Great Lakes' argument that the public trust doctrine requires the state to protect the public's right to hunt wolves on land.  Great Lakes asserts that wolves "ha[ve] a connection to water" in that "research studies have now demonstrated a positive correlation between wolf recovery and watershed

19

recovery." However, Great Lakes fails to develop an argument that a mere "connection to water" is enough—our state constitution and the case law that Great Lakes cites demonstrate that the public trust doctrine applies to the state's navigable waters, and Great Lakes does not sufficiently connect the hunting of wolves to the use of navigable waters. Accordingly, we reject Great Lakes' arguments and conclude that the circuit court properly dismissed Great Lakes' claim under the public trust doctrine.

### E. Right to Hunt

¶41 Great Lakes argues that the circuit court improperly dismissed its claim that the respondents interfered with the right to hunt under Wisconsin's Constitution. We conclude that Great Lakes failed to adequately plead this claim.

¶42 Article 1, section 26 of the Wisconsin Constitution provides: "The people have the right to fish, hunt, trap, and take game subject only to reasonable restrictions as prescribed by law." This provision "does not impose any limitation upon the power of the state or DNR to regulate hunting, other than that any restrictions on hunting must be reasonable." *Wisconsin Citizens Concerned for Cranes & Doves v. DNR*, 2004 WI 40, ¶46, 270 Wis. 2d 318, 677 N.W.2d 612, *superseded by statute as stated in* *Palm*, 391 Wis. 2d 497.

¶43 Here, as the circuit court concluded, the wolf management plan does not impose any restrictions on hunting. Instead, as Great Lakes itself explains in making its right-to-hunt argument, the plan "establishes the criteria for determining wolf harvest quotas, wolf zones, and population targets," and, as a result, the plan "*could* cause unreasonable restrictions or population depletion that violates the right to hunt." (Emphasis added.) Although any hunting restrictions issued in reliance on the wolf management plan might be challenged as

unreasonable restrictions on hunting, because the wolf management plan itself imposes no such restrictions, Great Lakes' right-to-hunt claim fails.[8]

## II. *The circuit court did not erroneously exercise its discretion by dismissing Great Lakes' petition with prejudice.*

¶44 Great Lakes argues that the circuit court erred in dismissing Great Lakes' petition with prejudice. We conclude that Great Lakes fails to show that the court erroneously exercised its discretion.

¶45 "The decision to grant leave to amend a [pleading] is within the [circuit] court's discretion." *Carl v. Spickler Enters., Ltd.*, 165 Wis. 2d 611, 622, 478 N.W.2d 48 (Ct. App. 1991). "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656.

¶46 In their motion to dismiss, the respondents argued that the petition should be dismissed with prejudice because its defects could not be cured by a subsequent petition. *See State ex rel. Schatz v. McCaughtry*, 2003 WI 80, ¶36, 263 Wis. 2d 83, 664 N.W.2d 596. In its response, Great Lakes argued that "[t]o the extent that the [p]arties have identified some defects in the pleadings, [Great Lakes] should be allowed to cure these by means of an amended [p]etition." At

---

[8] In its petition for judicial review, Great Lakes initially alleged that a proposed rule—WM-03-21, which was approved by the Board around the same time the wolf management plan was, which codified wolf harvest regulations, and which implemented recommendations from the wolf management plan—also violated the right to hunt. However, in its response to the motion to dismiss, Great Lakes conceded that its challenge to the proposed rule was not ripe because the rule had not yet been approved by the legislature.

the hearing during which the circuit court granted the motion to dismiss, the respondents again argued that the dismissal should be with prejudice for the reasons stated in their brief. The court agreed. At no point at the hearing did Great Lakes request leave to amend the petition or otherwise argue that the petition should be dismissed without prejudice.

¶47 On appeal, Great Lakes points to three errors in the petition that Great Lakes argues could have been cured in an amended petition. Great Lakes argues that an inadvertent omission from the caption could be cured, that it could strengthen its declaratory judgment claim by clarifying that it was seeking to prevent discriminatory treatment in the future, and that it could revise the petition to remove theories that it initially pled but subsequently abandoned. However, Great Lakes does not explain, nor do we discern, why any of Great Lakes' proposed amendments would save Great Lakes' claims from dismissal. As the respondents argue, none of the proposed amendments would cure the defects in the petition that resulted in its dismissal. Great Lakes does not refute this, thereby conceding the point. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

¶48 Otherwise, Great Lakes argues that the circuit court's decision was "hasty and arbitrary," and "an impromptu action that does not reflect a considered judgment." This mischaracterizes the court's decision. The court stated that it did not "anticipate or foresee an amended petition being filed" and that the petition was being dismissed "with prejudice because … the … scope of issues which could be raised had been raised and I've ruled on them." When viewed in context, it is clear that the court was agreeing with the respondents' argument—that, given the nature of the court's ruling on the motion to dismiss, granting Great Lakes

leave to amend its petition was not appropriate because Great Lakes would not be able to amend its petition such that it could withstand another motion to dismiss. Although Great Lakes takes issue with the fact that the court did not explain its ruling on this point in more detail, the court's analysis was appropriate given that Great Lakes did not request at the hearing that any dismissal be without prejudice or seek leave to amend the petition and that Great Lakes' briefing on this point was comprised of a single sentence. In sum, we conclude that Great Lakes has not shown that the court erroneously exercised its discretion by dismissing the petition with prejudice.

## CONCLUSION

¶49 For the reasons stated, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.